In re FREEDOM SOLAR CENTER, INC., Debtor.

Paulette P. PARKER, Trustee, Plaintiff-Appellee,

v.

Robert G. FRAZIER, Defendant-Appellant.

Civ. No. 84–0353 P.

United States District Court, D. Maine.

May 31, 1985.

Paulette P. Parker, Portland, Me., for plaintiff-appellee.

Ralph A. Dyer, Portland, Me., for S. Freeman and Atlantis Solar.

Robert G. Frazier, Portland, Me., for Robert Frazier.

## OPINION

GENE CARTER, District Judge.

This case is before the Court on appeal from a summary judgment granted in favor of the Trustee by the bankruptcy court.

This is an adversary matter arising out of a bankruptcy proceeding filed under Chapter 7 of the Bankruptcy Code. Freedom Solar Center, Inc. (the Debtor) filed a voluntary petition for relief in the bankruptcy court on or about February 15, 1983. Robert G. Frazier, the Defendant in this adversary matter, served as the Debtor's attorney in the filing of the action. Frazier also represents Stephen A. Freeman, the sole shareholder of the Debtor, and Atlantis Solar Rooms, Inc., a corporation of which Freeman is a director and stockholder. Paulette Parker, Esq., was appointed Trustee of the estate.

At some point after the commencement of the case, Frazier informed the Trustee that Freeman was interested in purchasing assets of the Debtor. In a letter to Frazier dated May 10, 1983, the Trustee indicated that the assets would be sold for $900. In the same letter, the Trustee indicated that she had arranged to have the assets picked up on May 16, 1983. Frazier responded on behalf of Freeman that he would offer $600 for certain assets, or $800 for another group of assets. On May 18, 1983, the Trustee rejected Freeman's offer and advised Frazier that the assets, which were in Freeman's possession, would be picked up within the next few days. On May 20, 1983, an agent of the Trustee notified Frazier that he would pick up the assets on Saturday morning, May 21, 1983. Frazier states that he told the agent that notice of the pick-up was unreasonably short, that the time for pick-up was inconvenient, that the Trustee had not responded to Freeman's offer to purchase the assets and that Freeman's offer would be better for the estate than an auction. Affidavit of Robert G. Frazier, June 14, 1983, ¶ 5. Frazier states that he refused to deliver the assets at the requested time. *Id.* In a letter to the Trustee dated May 24, 1983, Frazier recounted his discussion with the Trustee's agent. He stated further that the Trustee's letter of May 18, 1983 did not respond to his $800 offer and that he was awaiting a response to that offer.

The Trustee subsequently requested Frazier to withdraw from his representation of Freeman on the ground that Freeman's interests were adverse to those of the Debtor, and that his multiple representation violated M. Bar R. 3.4. She reported the alleged violation of the Bar Rules to the Maine Board of Bar Overseers and brought, in the bankruptcy court, an action to restrain Frazier from further representation of Freeman. Her subsequent motion for summary judgment was granted. The bankruptcy court held that Frazier's concurrent representation of the Debtor, Freeman and Atlantic violated M. Bar R. 3.4(c), 42 B.R. 261 (1984). Frazier appeals to this Court.

On appeal, Frazier raises two major challenges to the decision of the bankruptcy court. First, Frazier contends that there is a genuine factual issue as to whether Freeman was interested in delaying the turnover of the assets, which should have prevented the bankruptcy court from granting summary judgment. Second, Frazier argues that once the case was commenced, he no longer represented the Debtor within the meaning of M. Bar R. 3.4(c).

### I.

Frazier concedes that the interests of the Debtor and those of Freeman conflict in at least one respect: Freeman wants to purchase the corporate assets at the lowest

possible price, while the Debtor and Trustee seek the highest possible price for those assets. Frazier contends, however, that a genuine issue of material fact exists as to whether Freeman was interested in delaying the turnover of the assets, in opposition to the Debtor's interest in and duty to promptly turn over the assets. This issue of fact, Frazier argues, should have prevented the bankruptcy court from granting summary judgment. *See* Fed. R. Civ. P. 56.

Frazier does not, however, offer a reason why the undisputed conflict as to negotiation of a price should not be sufficient to support the bankruptcy court's legal conclusion that he violated the Bar Rules, assuming the Court's application of M. Bar R. 3.4 is correct. The bankruptcy court grounded its decision on the existence of two areas of conflict, turnover of the property and negotiation of a price for the assets. Since Frazier concedes that there is a conflict with respect to negotiation of a price, he gains nothing by asserting that a genuine issue of fact exists as to Freeman's interest in delaying turnover of the assets. The Court will not, therefore, determine the propriety of the bankruptcy court's "finding" but will instead turn to the weightier question as to whether disqualification pursuant to M. Bar R. 3.4(c) is necessary.

## II.

In this federal judicial district, the ethical duties of attorneys are governed by the Maine Code of Professional Responsibility, which is set forth as Rule 3 of the Maine Bar Rules. Local Rule 5(d)(2). The Trustee argues that Frazier's conduct violates M. Bar R. 3.4(c), which provides:

(c) *Multiple Employment Forbidden.* A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be, or is likely to be, adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted by subdivision (d) of this rule.

Although he concedes that the interests of the Debtor and those of Freeman conflict, Frazier argues that the conflict is illusory because the role of the debtor's attorney is very limited once a Chapter 7 case is commenced. His position rests on "the simple reality that the Debtor's attorney, following the filing of a Chapter 7 petition, has no ability or duty to perform any professional duties on behalf of the Debtor." Appellant's Brief at 12. Therefore, Frazier argues, he cannot be found to be "representing" the Debtor for purposes of M. Bar R. 3.4(c).

Upon the commencement of a case in bankruptcy, an estate is created, comprised of the property, claims and rights of the debtor. 11 U.S.C. § 541. The trustee is the representative of the estate. 11 U.S.C. § 323. Frazier argues that the Trustee's power over the estate is so broad that there is no meaningful way in which an attorney can represent the debtor in the bankruptcy proceeding.

The debtor, however, does not cease to exist as a distinct legal entity. Moreover, the debtor is obligated by statute to perform the following duties:

(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, and a statement of the debtor's financial affairs;

(2) if a trustee is serving in the case, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title;

(3) if a trustee is serving in the case, *surrender to the trustee all property of the estate* and any recorded information, including books, documents, records, and papers, relating to property of the estate; and

(4) appear at the hearing required under section 524(d) of this title.

11 U.S.C. § 521 (1982), *amended by* Pub.L. No. 98–353, § 305, 98 Stat. 352–53 (1984) (emphasis added).

The bankruptcy court rested its finding of differing interests on 11 U.S.C. § 521. Neither the bankruptcy court nor the par-

ties cited any instance, apart from those specified in section 521, in which an attorney for the debtor in a Chapter 7 proceeding would have occasion to "represent" the debtor in the proceeding. Representation in these instances presumably would consist of the attorney's advising the debtor to fulfill his statutory duties to the estate.

Frazier argues that the duties imposed by section 521 do not require the attorney to represent the debtor's interest in a manner that may conflict with the interest of the sole shareholder of the corporate debtor who desires to purchase the assets. Although Frazier is correct that the debtor's role—and that of the debtor's attorney—is greatly circumscribed once the trustee takes over, *see Commodity Futures Trading Commission v. Weintraub*, —— U.S. ——, 105 S.Ct. 1986, 85 L.Ed.2d 372, (1985), his argument that there is left no real potential for conflict sweeps too broadly.[1] The duties listed in section 521 should be placed in context of the debtor's ultimate interest, to obtain a discharge. To the extent that he cooperates fully with the trustee and promptly turns over all property, thus aiding the trustee in offering maximum satisfaction to creditors, his interest in obtaining a prompt discharge is served. An attorney representing the debtor is in a position to advise the debtor to further the debtor's interests, even though the amount the debtor can actually do for himself is limited by the broad power of the trustee.

Now it must be determined whether the corporate debtor's interests, to the limited extent that they are not subsumed within the estate, differ or are likely to differ from those of the corporate debtor's sole shareholder. The bankruptcy court observed that the debtor and the estate have an interest in obtaining the highest price possible for property of the estate, whereas the buyer seeks the lowest price possible. In this case, however, the Debtor's attorney has no power to influence the selling price of assets; the Trustee has full control over the selling price. 11 U.S.C. § 363(b) (1982), *amended by* Pub.L. 98–353, § 442, 98 Stat. 372 (1984). Insofar as price is concerned, therefore, Frazier had no power to act in contravention of the Debtor's interest in order to further Freeman's interests. As the facts of this case demonstrate, negotiations for the purchase of assets were conducted at arms' length.

The bankruptcy court found a second area of conflict. The court stated that Freeman was interested in delaying the turnover of the assets. This interest would conflict with the duty and interest of the Debtor to promptly turn over the property and to cooperate with the Trustee. As the sole shareholder of the Debtor, Freeman had a duty and interest to promptly turn over the property to the Trustee. As an individual prospective purchaser, the bankruptcy court found, his interest was to delay the turnover of the assets. Because Frazier represented Freeman in both his capacities, the bankruptcy court concluded, Frazier was involved in representing differing interests.

As noted above, *see supra* Part II of this opinion, Frazier argues that this finding was improper on a motion for summary judgment. Even assuming, however, that such a conflict exists, Frazier urges the

---

1. The United States Supreme Court discussed the limited role of a corporate debtor's management after the filing of a bankruptcy petition in the recently decided case of *Commodity Futures Trading Commission v. Weintraub, supra.* The Court held that the power to exercise the attorney-client privilege passes from the corporate debtor's directors to the trustee upon commencement of a case. The rationale underlying this holding was that, under the bankruptcy code, the trustee "plays the role most closely analogous to that of a solvent corporation's management." —— U.S. at ——, 105 S.Ct. at 1993. The Court stated:

> Given that the debtor's directors retain virtually no management powers, they should not exercise the traditional management function of controlling the corporation's attorney-client privilege, *see supra*, at ——, unless a contrary arrangement would be inconsistent with policies of the bankruptcy laws.
> *Id.*

The Court noted, however, that the debtor's directors have a role to play: "to turn over the corporation's property to the trustee and to provide certain information to the trustee and to the creditors. § 521, 343." *Id.* The bankruptcy court found this role to be significant in this case.

Court to hold as a matter of law that he was not representing differing interests. The Court is not prepared to go so far as to hold that there are no matters in which the Debtor's and Freeman's interests are adverse and as to which Frazier has authority to advise the corporate Debtor. In this case, the facts would support an inference, disputed by Frazier, that Freeman had an interest in delaying turnover of the assets adverse to the Debtor's interest in full cooperation with the Trustee. The limited sphere in which the Debtor may act independently of the Trustee leaves some room for a possibility for conflict.

■ Frazier, as attorney for the Debtor · and Freeman, is, in theory, likely to be involved in representing differing interests. The analysis, however, does not end here. It remains to be determined whether the remedy of disqualification in the circumstances present in this case will further the policies of and redress the prejudice intended to be avoided by M. Bar R. 3.4(c).

M. Bar R. 3.4(c) is the same as DR 5–105(B) of the Model Code of Professional Responsibility. The fundamental policy underlying the conflict of interest rules is to eliminate "the possibility of a potential relationship or interaction between or among the interests which may preclude *absolute loyalty to each . . . .*" Reporter's Notes, M. Bar R. 3.4(b), Me.Rptr., 396–400 A.2d LXXII. Courts applying DR 5–105(B) have identified a second policy underpinning: the maintenance of the integrity of and public confidence in the legal system. *See, e.g., International Business Machines Corp. v. Levin,* 579 F.2d 271, 283 (3rd Cir.1978); *Brown & Williamson Tobacco Corp. v. Daniel International Corp.,* 563 F.2d 671, 673 (5th Cir.1977).

In order to determine whether disqualification will further the policies of the Bar Rules, it is useful to examine the relationship between the two clients whose interests are alleged to be adverse in this case. The corporation, Freedom Solar Center, Inc., is a Maine corporation owned in its entirety by Stephen A. Freeman. The law treats the corporation and Freeman as separate persons. The corporation, however, may act only through a natural person or persons. "A corporation cannot speak directly to its lawyers." *Commodity Futures,* —— U.S. ——, 105 S.Ct. at 1991.

The record does not reveal the management structure of Freedom Solar Center, Inc., but neither party disputes that Freeman, as sole shareholder, controls the corporation. He is the agent who acts and receives legal counseling on behalf of the corporation. He is the natural person who had physical control of the tangible assets of the corporation. To the limited extent that the corporation had liberty to act independently of the bankruptcy trustee once the case had commenced, Freeman was the person who had to act on the corporation's behalf. The corporation's attorney could render advice to the corporation with respect to these matters only through Freeman as agent for the corporation.

Meanwhile, Freeman the individual was entitled to employ legal counsel in the pursuit of his own affairs. Once Freeman, the individual, became interested in acquiring the corporation's assets, his interests were potentially in conflict with those of the corporate debtor, and significantly, his own as *agent* for the corporate debtor. Therefore, Freeman *himself* had a potential conflict of interest by virtue of the two roles he was playing. The disagreement that spawned this adversary proceeding concerned turnover of the tangible assets; the heart of the problem was that Freeman, who possessed the assets as agent for the debtor, also allegedly had reason to delay turnover of the assets to advance his individual interest in negotiating a favorable price for the assets.

The real conflict of interest in this case, if any, arises from the dual roles played by Freeman. In this context, disqualification of an attorney who represents both the debtor, whose agent is Freeman, and Freeman the individual is futile. The result would be that Freeman would still receive potentially conflicting advice, but from two different attorneys. This would hardly further the underlying purposes of the ethical rules, beyond creating a falsely pristine

professional image. Since only one natural person will receive advice, his attorney cannot be said to be engaged in multiple representation in any practical sense. Moreover, such a formalistic requirement is unlikely to do much to enhance confidence in the legal profession.

The error of the bankruptcy court in this case lies in its failure to look beyond the corporate form and to analyze how the corporation can act under these circumstances. The legal status of the corporate entity, as conferred by state law, should not be disregarded. However, the focus of analysis in this case is the proper interpretation of the conflict of interest rules and their effective applicability to this particular set of circumstances. M. Bar R. 3.4(c) forbids multiple representation when it is likely to involve the lawyer in representing differing interests. Multiple representation is present in this case only in a theoretical sense; Frazier represents the corporation, but in that capacity, his client for all practical purposes is Freeman, the agent of the corporation. *Under these circumstances,* the conflict or potential for conflict cannot be dispelled by disqualifying the attorney from representing Freeman, for the attorney's conduct does not create and, more importantly, cannot end the conflict. Other means of remedying the conflict may exist, but they are not before this Court on this appeal.

If Freeman did, in fact, exploit his position as possessor of the corporate debtor's assets to the detriment of the estate, and to advance his own personal interest, the Trustee has just cause for concern. *See* § 521. But the means which she chose to deal with the alleged problem as it now stands misapprehends the root cause of the problem, that is, Freeman's own potential conflict of interest arising out of his potentially conflicting, dual roles as controlling agent of the corporation and potential purchaser of the assets.

Under the holding of the bankruptcy court, a closely held corporation and that corporation's controlling stockholder would each have to retain a separate attorney in each circumstance in which the interests of the sole shareholder are likely to differ from those of the estate. One circumstance of potential conflict of interest occurs when the trustee seeks to recover fraudulent or preferential transfers from the controlling shareholder. The Trustee in this case alleges that the estate will assert claims for such transfers against Freeman. In theory, the interest of the Debtor corporation in investigating and recovering such transfers will be adverse to Freeman's interest in avoiding liability for them. In reality, however, if any such transfers were made by the corporation, they had to have been made by Freeman acting as controlling shareholder. Therefore, requiring the Debtor corporation and Freeman to retain separate attorneys will not effectively solve *the conflict problem.* That arises out of the fact that the person controlling the corporation and the beneficiary of the alleged transfers are one and the same person. It is unlikely, if Freeman did receive improper transfers, that his willingness to cooperate with the Debtor corporation will be increased by the retention of two sets of counsel.

The Court is well aware of the position taken by some courts that doubts as to the existence of a conflict of interest should be resolved in favor of disqualification of the attorney. *See, e.g., Dodson v. Floyd,* 529 F.Supp. 1056, 1061 (N.D. Ga. 1981). The Court must also consider, however, the interests that would be impaired by disqualification in this case and similar cases. First, the Court should be solicitous of a client's right to freely choose his counsel. *See Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739 (2nd Cir.1978); *International Business Machines Corp. v. Levin,* 579 F.2d 271, 283 (3rd Cir.1978). Disqualification of an attorney impairs the exercise of this right. Second, disqualification will require employment of two attorneys, rather than one, thereby increasing the cost to the parties having an interest in the bankruptcy proceeding. In cases such as this one, involving a small closely-held corporation and a relatively small quantity of resources, the additional expense of additional counsel may prove to be intolerably burdensome. Absent anything more than

a theoretical conflict of interest, these interests militate strongly against disqualification of counsel. Consequently, the bankruptcy court erred in concluding that Frazier must, on these facts, be disqualified from representing Freeman and Atlantis Solar Homes, Inc.

The Court's holding is limited to the facts of this case. It is premised upon the fact that here, for purposes of the application of the *ethical rules* to the attorney, the Debtor and Freeman are in substance one and the same person and that any conflict of interest is, in reality, that of the client.

Having concluded that there is, on the facts presented here, no violation of M.Bar R. 3.4(c) by the attorney, even if the Debtor and Freeman are assumed to have conflicting interests, the Court does not reach the question of whether the existence of a material issue of fact should have prevented the bankruptcy court from granting summary judgment. Nor does it reach the question whether the parties consented to multiple representation under M. Bar R. 3.4(d).

It is *ORDERED* that the bankruptcy court's Memorandum Decision and Order directing Appellant Robert G. Frazier to withdraw from employment by Stephen A. Freeman and Atlantis Solar Homes, Inc. be, and is hereby, *VACATED*, and the Trustee's Motion for Summary Judgment be, and is hereby, *DENIED*.

So ORDERED.