**ROGER J. AU & SON, INC., et al., Plaintiffs,**

v.

**AETNA INSURANCE COMPANY, et al., Defendants.**

**In re ROGER J. AU & SON, INC., Debtor-in-Possession.**

**No. C84–2962A.**

United States District Court, N.D. Ohio, E.D.

June 11, 1986.

John A. Schwemler, Brouse & McDowell, Akron, Ohio, Richard A. Princic, Canton, Ohio, for plaintiffs.

Edward Brown, Cleveland, Ohio, David M. Black, Birmingham, Mich., for defendants.

## MEMORANDUM OPINION

DOWD, District Judge.

■ The appellant,[1] Boggs, Boggs & Boggs, L.P.A., has appealed to this Court from the final order disqualifying it as counsel for the debtor in possession, Roger J. Au & Son, Inc., the subject of bankruptcy case no. 683–00986 pending in the United States Bankruptcy Court for the Northern District of Ohio. The appellees in the case, Aetna Insurance Company and Michigan National Bank of Detroit (MNBD), have not filed responsive briefs with this Court.[2] For the reasons that follow, the decision of the bankruptcy judge is affirmed.

### I.

The appeal presently before the Court arises out of the bankruptcy proceedings involving Roger J. Au & Son, Inc. and CDECO Maritime Construction, Inc. The appellees, Aetna Insurance Company and Michigan National Bank of Detroit, are ma-

1. In the original notice of appeal, Baran & Baran Company, L.P.A., was included as an appellant, appealing from the bankruptcy court's final order disqualifying it as counsel for the debtor in possession, Roger J. Au & Son, Inc. The Court has previously granted Baran & Baran Company's uncontested motion to dismiss its appeal.

2. The Court has contacted counsel for the appellees. Counsel informed the Court they do not intend to file briefs with the Court. The failure of the appellees to file opposing briefs does not impair the Court's ability to decide the merits of the appeal. *See United States v. Everett,* 700 F.2d 900, 902 n. 5 (3d Cir.1983).

jor creditors of Roger J. Au & Son, Inc. A series of court actions filed by MNBD prompted Au & Son to file a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1121 (1982 & Supp. II 1984). Au & Son filed the petition on July 26, 1983, and much of the early litigation in the case involved the motion for relief from stay filed by MNBD. Shortly before the hearing scheduled on the motion for relief from stay, MNBD filed a motion requesting that the bankruptcy court disqualify Edward C. Baran, and his firm Baran & Baran, and Jeffrey A. Nelson, and his firm Boggs, Boggs & Boggs, on the grounds that neither the attorneys nor their firms possessed the requisite disinterestedness and lack of interests adverse to the estate required by 11 U.S.C. § 327.

The bankruptcy judge made the following fact findings with respect to the Boggs firm, to which the appellant has not objected:

> The debtor became associated with the Boggs firm in May of 1983 when it retained Nelson to defend certain Admiralty claims filed by MNBD. The association expanded to include Nelson's performance of services for the debtor's principal officer and sole shareholder, Charles H. Au, as well as various related affiliates, among them being Roger J. Au International, Inc. (International).

> Nelson testified that any payments he received as counsel to the debtor in the Admiralty actions or as counsel to Mr. Au personally, were routinely drawn on the accounts of International. This practice continued until the filing on July 26, 1983 of the bankruptcy proceedings.

> The petition itself, signed by Nelson as the preparer, did not disclose any of the above payments. Instead, the statement of affairs indicated that on May 19, 1983 the Boggs firm received $1,500 from the debtor. On July 26, the filing date, the Boggs firm received according to the statement of affairs, a payment of $15,000—again, purportedly from the debtor. In fact, according to Nelson's testimony herein, both of these payments were made by International as compensation

for the Boggs firm's services in the Admiralty actions.

> The petition also, pursuant to former Bankruptcy Rule 219(b), disclosed that the Boggs firm had received $3,964 in connection with the bankruptcy filing as a retainer fee. Future compensation in turn, was to be paid by from [sic] debtor-in-possession's operations or by Mr. Au personally.

> Payments from International continued on a post-petition basis as Nelson testified that in November, 1983 the Boggs firm received two payments totalling $32,551.04. These payments, which according to Nelson, were compensation for services performed on behalf of Mr. Au personally, were not disclosed in the Boggs firm's first interim fee application filed on March 1, 1984.

*In re Roger J. Au & Son, Inc.*, 65 B.R. 322, 324–25 (Bankr.N.D.Ohio 1984) (Findings of Fact and Conclusions of Law). The bankruptcy judge concluded that the past representation of Charles H. Au, the principal officer and sole shareholder of Roger J. Au & Son, Inc., disqualified Nelson, and his law firm Boggs, Boggs & Boggs, from further representation of Roger J. Au & Son, Inc. The bankruptcy court determined that the past representation provided by Nelson and his firm rendered them not "disinterested," as defined in § 101(13) of the Code, and disqualified them under § 327(a).

Subsequently, Boggs, Boggs & Boggs requested the bankruptcy court to alter its judgment, or in the alternative, to provide a new trial on the issue of disqualification of counsel. In a well written and detailed opinion, the bankruptcy judge reaffirmed his prior decision. The bankruptcy judge made the following findings of fact as the basis for his legal conclusions:

> The Boggs firm has been involved with this case primarily through the efforts of Jeffrey A. Nelson. Mr. Nelson, as stated above, was retained by Au & Son, and has served as co-counsel with Mr. Baran from the date the petition was filed to

the date of his disqualification by the court. During the course of the Chapter 11 proceeding, Mr. Nelson has also provided various legal services for Charles H. Au and members of the Au family personally. The nature of the personal representation consisted of representing Charles H. Au in a lawsuit against Michigan National Bank of Detroit (MNBD) and its vice president, *and Mr. Nelson performed legal services relating to the potential liability of Charles H. Au arising from Mr. Au's personal guarantee of various loans obtained by the debtor from MNBD.* For these personal services, Mr. Nelson received payment from Charles H. Au in the amount of $32,551.04, consisting of a payment of $25,000.00 on November 2, 1983, and a payment of $7,551.04 on January 17, 1984. For services connected with the Chapter 11 proceedings, Mr. Nelson has filed a request for interim compensation which seeks legal fees in the amount of $31,252.50.

*In re Roger J. Au & Son, Inc.,* No. 683–00986, slip op. at 3–4 (Bankr.N.D.Ohio July 11, 1984) (Memorandum of Decision) (emphasis added).

In his opinion, the bankruptcy judge first determined that Congress retained the disinterestedness requirements contained in the current § 327(a) when it amended the former Bankruptcy Act of 1898. In so finding, the bankruptcy judge concluded that an attorney for a debtor in possession under Chapter 11 must be "disinterested" as that term is defined in § 101(13). The bankruptcy judge then framed the issue before him as whether the Bankruptcy Code permits counsel for a debtor in possession to provide legal representation to the debtor corporation's officers, directors, and shareholders during the pendency of bankruptcy proceedings. The judge decided that the Bankruptcy Code did not directly address the question, and looked for

guidance from the Code of Professional Responsibility. The court identified two serious problems inherent in simultaneous representation: first, the possibility of a shift of loyalty by counsel away from the debtor in possession, and to the shareholder or officer; and second, the loss of counsel for the debtor in possession acting as a counterweight to the strong tendency of the insiders to further their own interests over the interests of the reorganization process. The court concluded that the appearance of impropriety in simultaneous representation provides the requisite disinterestedness for the purposes of disqualification under § 327(a). The appellant then filed this appeal.

## II.

The appellant first argues that the bankruptcy court's determination that Boggs, Boggs & Boggs was not a "disinterested person" constitutes an overly broad reading of the bankruptcy code. The appellant argues that although the former bankruptcy rules governing disqualification outlawed the mere appearance of the material adverse interest, the recent amendments to the bankruptcy code changed the provisions to require the existence of an actual material adverse interest before an attorney may be disqualified under § 327(a). The appellant points to the express language of the statute, the legislative history, and the provisions in the bankruptcy code that provide alternate protection mechanisms to disqualification, as evidence that the Code does not require disqualification of attorneys who engage in simultaneous representation of a debtor-in-possession and officers and shareholders of that debtor-in-possession.

Section 327(a), which governs the employment of professional persons by the trustee or the debtor-in-possession,[3] provides:

---

3. For the purposes of proceedings under Chapter 11, a debtor-in-possession possesses all the rights and duties of a trustee. *See* 11 U.S.C. § 1107(a) (1982). Thus, with certain express exceptions, the debtor-in-possession steps into

the shoes of the trustee. For instance, debtor-in-possession is not required to make the filings required under § 521(1), or to investigate the debtor's business and file a report. *See id.* § 1106(a)(2)–(4). In addition, § 1107(b) pro-

[T]he trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (1982).[4] Section 327(a) sets forth a two-part test for qualification of counsel to represent a debtor in possession.[5] Counsel must "not hold or represent an interest adverse to the estate," and must be a "disinterested person." *In re O'Connor*, 52 B.R. 892, 895 (Bankr.W.D. Okla.1985) (quoting § 327(a)). The Court notes, however, that both prongs of the test are satisfied where counsel is not a "disinterested person" because of the manner in which the Code defines "disinterested person." Under § 101(13)(E), a disinterested person is one who

does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason....

*Id.* § 101(13)(E).[6] Thus, "having" an interest adverse to the estate, and "holding or representing" an interest adverse to the estate, are identical considerations in the Court's view.

The courts have defined holding or representing an interest adverse to the estate as possessing, or serving as an attorney for a person possessing, either an "economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant ...

or ... a predisposition under circumstances that render such a bias against the estate." *In re Roberts*, 46 B.R. 815, 822–23 (Bankr. D.Utah 1985); *see In re O'Connor*, 52 B.R. 892, 896 (Bankr.W.D.Okla.1985) (quoting *In re Roberts*). The question before the Court, then, is whether counsel for the debtor-in-possession, who also represents the debtor-in-possession's principal officer and shareholder, Charles H. Au, represents a person holding an interest that might reduce the value of the estate, that might result in a dispute with the estate, or that might cause bias against the estate. The standard is a strict one:

As a general principle, professional persons employed by the trustee should be free of any conflicting interest which might in the view of the trustee or the bankruptcy court affect the performance of their services or which might impair the high degree of impartiality and detached judgment expected of them during the administration of a case.

2 W. Collier, Collier on Bankruptcy ¶ 327.-03.[3][a], at 327–13 (L. King ed. 1985); *see also In re Codesco, Inc.*, 18 B.R. 997, 999 (Bankr.S.D.N.Y.1982) ("a 'disinterested' person should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters") (citing *In re Realty Associates Securities Corp.*, 56 F.Supp. 1007, 1007 (E.D.N.Y.1944)).

The Boggs firm performed legal services for the debtor in possession, Roger J. Au & Son, Inc. The Boggs firm, through Mr. Nelson, also provided legal services for Charles H. Au and members of the Au family. As indicated above, Charles H. Au is the principal officer and sole shareholder of Roger J. Au & Son, Inc. The bankruptcy judge found that "Mr. Nel-

---

**4.** The provisions of Chapter 3 of Title 11 apply in any case under Chapter 7, 11, or 13. *See id.* § 103(a) (1982).

**5.** The Code's rules of construction provide that "'or' is not exclusive...." *Id.* § 102(5) (1982).

**6.** Section 101(13) also contains definitions of "disinterested person" not applicable to this appeal. *See id.* § 101(13)(A)–(D).

vides that § 327(a) applies to debtors in possession, just as it does to trustees, except that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." *Id.* § 1107(b).

son performed legal services relating to the potential liability of Charles H. Au arising from Mr. Au's personal guaranty of various loans obtained by the debtor from MNBD." The Court finds that an attorney who represents a debtor-in-possession, and also represents an individual who is a potential debtor of the debtor-in-possession, represents an interest adverse to the estate. The Court finds an actual potential conflict, *see In re O'Connor*, 52 B.R. at 897,[7] that makes Nelson and the Boggs firm "interested" parties within the scope of § 101(13)(E), and thus subject to disqualification § 327(a).[8] Accordingly, the Court finds the appellant's first argument without merit.

### III.

The bankruptcy judge found further support for his decision in the Code of Professional Responsibility. The bankruptcy judge cited the provisions of the Code of Professional Responsibility that emphasize the importance of loyalty by an attorney to his or her corporate client. The attorney should not represent the corporation's stockholders, directors, or officers unless convinced that differing interests are not present. The appellant's second argument is that "the Code of Professional Responsibility does not prohibit simultaneous representation of a corporation and its sole shareholder." The appellant contends that disqualification is only warranted where an actual conflict of interest is present.

■ Although the Code does not prohibit simultaneous representation of a corporation and its officers, shareholders, or directors, it conditions such representation on the absence of conflicting interests. This condition, coupled with the Code's admonition to "avoid even the appearance of impropriety," suggests that a court need not find actual evidence of ethical violations before disqualifying counsel. *See D.H. Overmyer Co. v. Robson*, 750 F.2d 31, 34 (6th Cir.1984) (court's denial of *pro hac vice* status to counsel appropriate "when *some* evidence of ethical violations was present") (emphasis added) (citing *Ross v. Reda*, 510 F.2d 1172 (6th Cir.1975) (*per curiam*) (trial court properly rejected criminal defense attorney's *pro hac vice* application where attorney refused to limit out of court statements about case and potential violations of four Ohio disciplinary rules and cannons of ethics)). Further, the standard for disqualification is not actual conflict, but whether "there is a reasonable possibility of the occurrence of [a] 'specifically identifiable appearance of improper conduct,' and [whether] the 'likelihood of public suspicion or obloquy outweighs the social interest' in obtaining counsel of one's choice." *Kraft, Inc. v. Alton Boxboard Co. (In re Corrogated Container Antitrust Litigation)*, 659 F.2d 1341, 1345 (5th Cir.1981).

At least one court has disqualified counsel under § 327(a) for representing a debtor and the debtor's sole shareholder on the basis they possessed potentially conflicting interests. *Parker v. Frazier (In re Freedom Solar Center, Inc.)*, 776 F.2d 14, 17 (1st Cir.1985). In *Freedom Solar*, attorney Frazier represented the debtor, as well as Freeman, the sole shareholder of the debtor. Frazier attempted to purchase certain assets of the estate on behalf of Freeman. The trustee subsequently filed a motion to disqualify Frazier as attorney for Freeman, arguing that Freeman's interests were adverse to those of the debtor, also represented by Frazier, and that the multiple representation violated the Professional Code of Responsibility. The Court found two adverse interests between the debtor and the

---

7. The *O'Connor* court determined that the Code required disqualification for potential actual conflicts: "Disqualification should be mandated when an actual, as opposed to hypothetical or theoretical, conflict is present. This in no way precludes disqualification for a potential conflict. The test is merely one of a potential actual conflict." *In re O'Connor*, 52 B.R. at 897.

8. The Court notes that "[§ 101(13)(E) ] appears broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code." W. Collier, *supra*, ¶ 327.03[2][f], at 327–19.

debtor's sole shareholder, one of them a "potential conflict," and held that under the Model Code of Professional Responsibility, a *prima facie* case of disqualification existed.[9] The Court disqualified counsel, stating: "We think it is proper to include this potential conflict in considering disqualification." *Id.*[10]

■ The bankruptcy judge found that the representation by Nelson and his firm of the debtor in possession, and the debtor in possession's sole shareholder and principal officer, who was also a guarantor of certain of the debtor in possession's debts, created a significant danger of a shifting of loyalties. Further, the bankruptcy judge found that the important roles of counsel for the debtor in possession to advise the debtor in possession regarding the reorganization process, and to act as "a counterweight to the insiders' tendency to favor their interests above others in the reorganization process," was jeopardized by the close relationship between Nelson and his firm, and Charles H. Au. Implicit in the bankruptcy judge's findings is the conviction that the elimination of such dual representation, and the problems that might result, increases public confidence in the bankruptcy process. The Court finds ample authority to support the bankruptcy judge's determination that the possibility of conflict warrants disqualification of an attorney who represents simultaneously a debtor in possession, and the debtor in possession's sole shareholder and principal officer, where the two hold potentially adverse interests. Accordingly, the Court finds the appellant's second argument without merit.

## IV.

The appellant also requests the Court to vacate the disqualification because the disqualification motion filed by MNBD was intended to harass the appellants, and to delay, and to interrupt the bankruptcy proceedings. The Court notes that the bankruptcy judge made no findings of fact in his opinion regarding this issue, and the appellant did not raise the argument before the bankruptcy judge. It is well settled that a court sitting as an appellate body may not review arguments not presented to the lower court. *See Sigmon Fuel Co. v. Tennessee Valley Authority*, 754 F.2d 162, 164–65 (6th Cir.1985). Accordingly, the Court refuses to overturn the bankruptcy court's decision on the basis that the motion was filed in bad faith as a litigation tactic.

## V.

For the foregoing reasons, the Court affirms the decision of the bankruptcy court.

IT IS SO ORDERED.

9. The court cited the existence of multiple clients and the lack of full consent as the other two elements in the *prima facie* case.

10. The court rejected the district court's analysis, upon which the appellant relies heavily. *See Parker v. Frazier (In re Freedom Solar Center, Inc.),* 49 B.R. 996 (D.Me.1985). The district court found a potential conflict of interest, but refused to disqualify counsel after weighing the policy reasons against disqualification. The district court found that the conflict was in the dual roles of Freeman, and not in the attorney. Thus, requiring separate counsel for Freeman in his dual roles would not eliminate the conflict. *See id.* at 1001. The appellant relies on this

argument, but the argument is not persuasive. Although the conflict might always be present in the client, the object of the rule is to prevent a conflict in the attorney. This goal is achieved by requiring separate counsel. *See Freedom Solar,* 776 F.2d at 18.

The same rationale is applicable to the appellant's relationship with Charles H. Au. Au's interest as the sole shareholder and officer of Au & Son is different from that of Au as guarantor of Au & Son's debts, especially where Au & Son is in a reorganization posture and must be sensitive to the interests of its creditors. Counsel's representation of all interests creates a conflict of interest due to its dual representation.