**In the Matter of BH & P, INC., A New Jersey Corporation, Philip Alan Herman, Bruce Berkow, Debtors.**

**Civ. No. 89–4401 (GEB).**

United States District Court,
D. New Jersey.

Sept. 13, 1990.

David R. Gross, Donald P. Jacobs, Budd Larner Gross Picillo Rosenbaum Greenberg & Sade, for Bederson & Co.

Gary N. Marks, Ravin, Greenberg & Zackin, P.A., for Carmen J. Maggio and pro se.

Marta G. Andrews, Weil, Gotshal & Manges, amicus curiae.

OPINION

BROWN, District Judge.

## I. INTRODUCTION

This appeal from an Order and Memorandum Opinion of the United States Bankruptcy Court, *In re BH & P, Inc.*, 103 B.R. 556 (Bankr.D.N.J.1989), raises important questions concerning the administration of related estates under the Bankruptcy Code. At issue is the ethical propriety of employment by related estates of a common trustee, attorney, and accountant. The statutory framework for resolution of this issue is provided by Congress in §§ 327 and 701 of the Bankruptcy Code. The bankruptcy court determined that these provisions of the Code did not permit the continued retention of a common trustee, attorney, and accountant for three related estates, where one estate had filed proofs of claim against the other two estates. Appellants disagree with the bankruptcy court's interpretation and application of the Code, and therefore have filed the instant appeal.

## II. BACKGROUND

### A. THE BH & P, HERMAN AND BERKOW ESTATES

#### 1. The BH & P Estate

BH & P, Inc., a New Jersey corporation specializing in the manufacture of credit cards, filed a voluntary petition under Chapter 11 of the Bankruptcy Code on April 14, 1986. The law firm of Ravin, Greenberg & Zackin, P.A. ("RGZ") was initially retained as counsel to the creditors' committee. On November 10, 1986, over the objections of both BH & P and its principal secured creditor, Bank of New York ("BNY"), the bankruptcy court entered an order converting the case from Chapter 11 to Chapter 7. Shortly thereafter, the United States Trustee appointed Carmen Maggio ("Maggio") as the Chapter 7 trustee for BH & P. Pursuant to 11 U.S.C. § 327(a), Maggio filed applications with the bankruptcy court to have RGZ retained as counsel, and Bederson & Company ("Bederson") retained as accountants. These applications were granted by the court on February 20, 1987, and March 6, 1987, respectively.

#### 2. The Herman Estate

Philip Alan Herman was President and a 10% shareholder of BH & P. On February 9, 1987, Herman filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Two days later, the United States Trustee appointed Maggio as Chapter 7 trustee for the Herman estate. Maggio petitioned the bankruptcy court for approval of RGZ and Bederson as his counsel and accountants for this estate as well. In support of his application to retain RGZ, Maggio informed the court that:

> [RGZ] does not hold nor represent an interest adverse to the estate and [is] disinterested and can represent and assist [Maggio] in carrying out his duties in this matter.

> [RGZ] served as attorneys to the Official Creditors' Committee during the Chapter 11 proceeding of BH & P ... and currently represents [Maggio] as Trustee of

BH & P ... in Chapter 7. [Herman] was a principal of BH & P.

A similar statement in support of the petition to approve Bederson was filed with the bankruptcy court. The court entered orders approving the retention of RGZ and Bederson on April 20, 1987, and June 29, 1987, respectively.

On June 9, 1987, Maggio filed an application for joint administration of the BH & P and Herman estates, which was approved by the bankruptcy court on July 7, 1987. That application disclosed to the court, *inter alia*, the following facts:

> Philip Alan Herman was a 10% stockholder and officer of BH & P, Inc. Although technically not 'affiliated' entities, as that term is defined in Section 101(2) of the Bankruptcy Code, the ... financial affairs [of BH & P and Herman] were closely related in the following respects:
>
> (a) Mr. Herman had interests in various limited and general partnerships and corporations, many of which also were involved in significant and allegedly questionable business transactions with BH & P, Inc.
>
> (b) As a result of the intertwined financial affairs of [BH & P and Herman], the scheduled creditors of [BH & P and Herman] overlap to a large extent. Indeed, Mr. Herman's Petition lists as contingent creditors all of the creditors scheduled in the BH & P, Inc. Petition.

### 3. The Berkow Estate

Bruce Berkow was Vice–President and a 90% shareholder of BH & P. On September 18, 1987, Berkow filed his own voluntary petition under Chapter 7. As with the BH & P and Herman petitions, the United States Trustee appointed Maggio to administer the estate, and he in turn sought appointment of RGZ and Bederson. The papers filed by Maggio with the bankruptcy court mirrored those filed in the Herman case, and disclosed that RGZ and Bederson were at the time assisting Maggio in both the BH & P and Herman matters. The court entered orders approving the reten-

tion of RGZ and Bederson on October 27, 1987, and November 13, 1987, respectively.

On November 11, 1987, Maggio filed a motion for joint administration of all three cases. The certification submitted in support of that motion repeated the disclosures made by Maggio, and quoted by this Court *supra*, in connection with the motion for joint administration of the BH & P and Herman estates. On December 14, 1987, the bankruptcy court granted the motion, and all three estates thereafter proceeded under the joint administration of Maggio, RGZ, and Bederson.

### B. THE INTERIM FEE APPLICATIONS

On February 14, 1989, interim fee applications were filed by Maggio, RGZ, and Bederson for services rendered in the BH & P case. Two days prior to the scheduled hearing, objections to the fee applications were registered by BNY. BNY was the primary secured creditor of BH & P, and it contended that common representation of the BH & P, Herman, and Berkow estates by Maggio, RGZ, and Bederson presented conflicts of interest which justified a denial of compensation under 11 U.S.C. § 328(c). BNY did not, however, seek disqualification of Maggio, RGZ, or Bederson in any of the three cases.

A hearing was held before the bankruptcy court on March 23, 1989. During this hearing, one of RGZ's attorneys informed the court that Maggio had filed a proof of claim on behalf of BH & P against the Herman and Berkow estates. The court expressed concern that this posed a conflict of interest for Maggio and the professionals. RGZ's attorney disagreed, arguing that because there were little or no assets in the Herman and Berkow estates from which to satisfy any unsecured claim by BH & P, the conflict was not actual but only illusory. When the court suggested that the act of filing the proof of claim created a conflict of interest, RGZ's attorney responded:

> It's not a conflict until the time comes, if the time ever comes, to review the claims

and make a determination whether or not there should be a challenge to the claim. At that point I could see a conflict, but simply to protect the corporation's position by filing a proof of claim which, depending on the recovery in the individual's estate, may not even have assets for the unsecured creditors ... I don't see that as an actual conflict at that point in time.

*See* Tr. March 23, 1989, at 11.

At the conclusion of the hearing, the bankruptcy court directed the parties to file briefs and certifications on the conflict of interest issue, and scheduled further hearings for June 12, 1989. The interim fee applications were denied without prejudice.

The bankruptcy court took testimony and heard further argument on June 12 and June 22, 1989. As framed by that court, two issues were addressed: first, whether Maggio and the professionals were aware of, and had adequately disclosed to the bankruptcy court, the facts surrounding what was at least a potential, and perhaps actual, conflict of interest; and second, whether the facts presented an actual conflict of interest which would require disqualification of, and/or denial of compensation for, Maggio, RGZ, and Bederson. *See* Tr. June 12, 1989, at 31.

With respect to the first issue, the testimony and argument adduced at the hearings revealed that Gary Marks, Esq., an attorney for RGZ, and Hugh Leonard, the United States Trustee, had discussed the possibility of asserting a cause of action on behalf of BH & P against Herman and Berkow, based on improper transfers of BH & P assets to the two individuals. This discussion was held in February 1987, shortly after Herman's Chapter 7 petition was filed, but before RGZ was retained as counsel to the trustee. *See* Tr. June 12, 1989, at 10.[1] Mr. Marks admitted that neither this discussion nor the possibility of the assertion of inter-debtor claims was specifically disclosed to the bankruptcy court in the applications for retention of Maggio, RGZ, and Bederson. Rather, those applications simply stated the parties' belief that they did not hold any "interest adverse to the estate" and were otherwise "disinterested" persons, language which tracked 11 U.S.C. § 327(a). Mr. Marks contended, however, that the existence of claims by BH & P against Herman and Berkow were "probably apparent from the debtor's schedules which indicated that substantial amounts of money had been transferred from BH & P to [Herman and Berkow] and from [Herman and Berkow] into these various tax shelters." *See* Tr. June 12, 1989, at 9. Those schedules had, of course, been filed with the bankruptcy court.

With respect to the second issue, the record shows that a proof of claim had indeed been filed by Maggio on behalf of BH & P against Herman and Berkow for $1.7 million. *See* Tr. June 22, 1989, at 35. Mr. Marks testified that the Herman estate had only $20–30,000 in assets, and the Berkow estate even less. *Id.* at 37. The only possible addition to those estates, accord-

---

1. In an affidavit submitted to the bankruptcy court in May 1989, Marks elaborated on the details of that discussion:

   I had a telephone conversation with the Honorable Hugh M. Leonard, United States Trustee, with respect to potential conflicts of interest which might arise during the administration of the Herman and BH & P estates. Mr. Leonard advised me that this situation had arisen numerous times in the past and that it was the policy of his office to move forward with a single trustee and counsel until such time as an actual conflict presented itself. If and when such a situation developed, a decision would be made with respect to appointing a substitute trustee with new counsel. In Mr. Leonard's view, this "wait and see" approach would effectively balance the need for an independent fiduciary and counsel against the administrative burden which would be presented by having multiple trustees and attorneys duplicating each other's efforts in investigating the financial affairs of the Debtors. I later was advised by Novalyn L. Winfield, the Assistant United States Trustee, that this policy was expressly based on the opinion of the Honorable Burton R. Lifland in *In Re O.P.M. Leasing Services, Inc.,* 16 B.R. 932 (Bky.S.D.N.Y.1982). In reliance on this policy, the Trustee and his professionals moved forward with the administration of these estates.

   *See* Affidavit of Gary Marks, Esq., at ¶ 18.

ing to Mr. Marks, would be 50% of the proceeds from the sale of 160 acres of property partially owned by Herman and Berkow. At the time of the June 22 hearing, the property had not yet been sold. *Id.* at 37–38.

It was the position of Mr. Marks and his colleagues that these facts presented only a potential, and not an actual, conflict of interest:

> Your Honor, the way we envisioned the administration of these estates, was that once we had moved this matter along and had marshalled most or all of the assets of the three estates, we thought that given the identity of the various creditor bodies, that the appropriate application would be one to substantively consolidate it. Had that motion, or if that motion is granted, then that may be a moot point. It will also be a moot point if the Berkow and Herman estates, ultimately, don't have sufficient assets to pay to unsecured creditors. I suppose the bottom line is, it's a potential conflict....

*See* Tr. June 12, 1989, at 20. The bankruptcy court disagreed with this position:

> [O]ne of the problems is that where there is, even if I use for the sake of argument your characterization of a potential conflict of interest, it may very well be the case that the judgment of the parties involved is influenced one way or the other, by the dual roles. It may be decided, for example, to pursue some claims harder than others, it may be decided to object ... to some claims more so than others and more so than would be the case if they were totally distinct fiduciaries and professionals. I don't think the concept of conflict of interest requires that there be assets staring one in the face, to fight about. *If there are potential assets available and if there are claims by one estate against another,*

*in my judgment that is a clear, crystal clear, conflict of interest....*

*Id.* at 20 (emphasis added).

## C. THE BANKRUPTCY COURT'S DECISION

At the conclusion of the June 22 hearing, the bankruptcy court rendered an opinion from the bench, which was followed by a published opinion. *See In re BH & P, Inc.,* 103 B.R. 556 (Bankr.N.J.1989). The court made several distinct findings of fact and conclusions of law which are the subject of this appeal.

First, the court disqualified Maggio as trustee for the Herman and Berkow estates. The court reasoned that, as trustee for BH & P, Maggio was a "creditor" of the Herman and Berkow estates[2], and therefore not a "disinterested person" under the Code.[3] Because the Code requires a trustee to be a "disinterested person", *see* 11 U.S.C. § 701(a)(1), Maggio was, in the opinion of the bankruptcy court, precluded from continuing as trustee for Herman and Berkow.

Second, the bankruptcy court disqualified RGZ and Bederson from serving Maggio as counsel and accountants in the Herman and Berkow cases. As with the trustee, professionals must be "disinterested persons" to qualify for employment by an estate, *see* 11 U.S.C. § 327(a). The court held that RGZ and Bederson were not disinterested because they represented both a debtor corporation and individual shareholders against whom the corporation had asserted claims. It found that the presence of interdebtor claims, coupled with the existence of assets in the Herman and Berkow estates which "may ultimately be sufficient" to satisfy all or part of those claims, left Ravin and Bederson with an "actual conflict of interest" which required their disqualification under § 327(c) of the Code. *See* 103 B.R. at 566.

---

**2.** In relevant part, 11 U.S.C. § 101(9) defines a "creditor" as an "entity that has a claim against the debtor...."

**3.** "Disinterested person" means person that:
(A) is not a creditor....

11 U.S.C. § 101(13)(A). The bankruptcy court also held that Maggio failed the disinterestedness standard of § 101(13)(E), which provides that a person is not disinterested if he or she has an "interest materially adverse to the interest of the estate ..., or for any other reason."

Third, the bankruptcy court denied the interim fee applications of Maggio and the professionals in the Herman and Berkow cases. Citing *Woods v. City Nat'l Bank & Trust Co.*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941), the court ruled that the existence of an actual conflict of interest was "alone" a "sufficient basis" to deny compensation to RGZ and Bederson under 11 U.S.C. § 328(c), and that Maggio's employment of RGZ and Bederson despite this conflict warranted denial of his fee application as well under § 326(d). *See* 103 B.R. at 566–68. In so ruling, it relied, at least in part, on a finding that Maggio and the professionals had "knowingly and intentionally" failed to disclose all facts concerning the existence of conflicts when they initially filed their applications for retention in the Herman and Berkow cases. Specifically, the bankruptcy court found that the parties had neglected to inform the court, as they were required to do by Bankruptcy Rule 2014, that BH & P had filed proofs of claim against Herman and Berkow. It attributed this breach of the duty of disclosure to improper motivations:

> The court also finds that although the motivation of the United States Trustee for having the same trustee and professionals in all three cases may have been to reduce total fees, the motivation of the trustee and professionals for withholding disclosure of the conflicts question from the court was to increase their shares of the total fees by receiving three fees apiece rather than one.

*See* 103 B.R. at 560.

Finally, the bankruptcy court adopted a standard for resolving future cases involving common representation of entities with conflicting interests. This standard was taken from *In re Parkway Calabasas Ltd.*, 89 B.R. 832 (Bankr.C.D.Cal.1988):

> Accordingly, this Court adopts the presumption that it is improper to appoint (1) a single trustee, (2) a single creditors' committee, or (3) the same counsel for the trustees, for the creditors' committees or for the debtors-in-possession under the following circumstances:
> (a) Where creditors of the debtors have dealt with such debtors as an economic unit (which may be reflected in guaranties and subordination agreements);
> (b) Where the affairs of the respective debtors (as reflected in inter-debtor accounts, jointly owned assets, guarantees, subordination agreements, or shared officers, directors or owners) appear to be substantially entangled;
> (c) [W]here assets have been transferred from one debtor to another in transactions that are not at arms length;
> (d) [W]here piercing of the corporate veil of one of the debtors is necessary or advisable to protect the rights of creditors of another debtor.

*Id.* at 835 n. 3 (emphasis added). The bankruptcy court here added a fifth circumstance where it would be presumptively improper to have common representation: "where one estate has claims against the other...." *See* 103 B.R. at 572.

## III. DISCUSSION

### A. CONFLICT OF INTEREST

#### 1. Maggio

11 U.S.C. § 701(a)(1) provides that a trustee must be a "disinterested person" to serve as the representative of an estate. The term "disinterested person" is defined in the Code:

> (13) "disinterested person" means person that—
> (A) is not a creditor....;
> (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ..., or for any other reason....

*See* 11 U.S.C. § 101(13)(A) and (E).

The bankruptcy court held that Maggio was not a "disinterested person" under either § 101(13)(A) or (E). With respect to § 101(13)(A), the court found that because Maggio had asserted a claim on behalf of BH & P against Herman and Berkow, and

because as trustee Maggio was the legal representative of the BH & P estate, Maggio was a "creditor" of the Herman and Berkow estates. *See* 103 B.R. at 561 (citing *In re Enercons Virginia, Inc.,* 812 F.2d 1469, 1472 (4th Cir.1987)). This conclusion is open to question, particularly in light of the authorities, both pre-Code and under the Code, which hold that a trustee is not a "creditor" within the meaning of § 101(13)(A) merely because he represents an estate which is a creditor. *See, e.g., In re Nashua Trust Co.,* 73 B.R. 423 (Bankr. D.N.J.1987).

It is unnecessary, however, for the Court to examine this finding in any depth, for the bankruptcy court also found that the trustee was not "disinterested" under § 101(13)(E). This provision, commonly known as the "catch-all" clause, has been held "broad enough to include anyone who 'in the slightest degree might have some interest or relationship that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'" *In re Glenn Electric Sales Corp.,* 99 B.R. 596, 601 (D.N.J. 1988) (quoting *In re Roberts,* 46 B.R. 815, 828 n. 26 (Bankr.D.Utah 1985)).

The bankruptcy court therefore properly found that Maggio's dual role as trustee for Herman and Berkow and for one of their creditors—the BH & P estate—constituted an impermissible conflict of interest. As that court recognized during the hearings:

> [I]t may very well be the case that the judgment of the parties involved is influenced one way or the other, by the dual roles. It may be decided, for example, to pursue some claims harder than others, it may be decided to object ... to some claims more so than others and more so than would be the case if they were totally distinct fiduciaries....

*See* Tr. June 12, 1989, at 22.

### 2. RGZ & Bederson

11 U.S.C. § 327(a) provides in full:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more *attorneys, accountants,* appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are *disinterested* persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(emphasis added).

As the language of the statute makes clear, attorneys and accountants must possess the same degree of disinterestedness in the estate which they represent as the trustee must possess under 11 U.S.C. § 701(a)(1). This was recognized very recently by another member of this Court in *In re Glenn Electric:*

> The span of Section 327 has also been interpreted to cover both actual and potential conflicts of interest.... Thus, the bankruptcy rules in and of themselves incorporate considerations which are the equivalent of [the] 'appearance of impropriety' standard [under the ABA's Code of Professional Conduct]. The bankruptcy laws prohibit not just actual conflict but also the potential for conflict which may be engendered by an attorney's representation of the debtor....

99 B.R. at 601 (citations omitted).

Maggio, RGZ, and Bederson have all focused on § 327(c), which qualifies § 327(a):

> In a case under chapter 7 ... of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an *actual conflict of interest.*

11 U.S.C. § 327(c) (emphasis added). The current text of § 327(c), and particularly the underscored language, was added by Congress in 1984 to permit common representation of affiliated or related estates unless an "actual" conflict of interest was present. The bankruptcy court explicitly found that an "actual" conflict existed, based on the assertion of claims by BH & P against the Herman and Berkow estates, and the presence of assets in the latter

estates from which those claims might eventually be satisfied. Although it may be unlikely that these assets will be available to satisfy these unsecured claims, the bankruptcy court held that the eventual availability of assets was not the pivotal concern—rather, it was the mere assertion of claims that placed the parties in antagonistic positions, and would undoubtedly cloud their judgment in deciding which avenues to pursue in administering the respective estates. This, the bankruptcy court held, was an "actual" conflict of interest. This Court can find no error in that determination.

■ RGZ and Bederson contend that the conflict here is merely "potential", and not yet "actual", because it is still uncertain whether there will be assets in the Herman and Berkow estates from which the BH & P claims might be satisfied. The Court cannot agree that this constitutes merely a "potential" conflict, or that Congress intended § 327(c) to be subject to such fine distinctions. Rather, the "actuality" of the conflict, as the bankruptcy court held, was the possibility that the parties would favor one estate over the other in their attempt to serve all of them. *See In re Michigan General*, 78 B.R. at 483–84 ("The 'actuality' of the conflict is not per se that counsel might hold a preference [under § 547], rather it is that counsel will be tempted to neglect its duties to the estate by being less than zealous in its investigation of the preference.").

The Court therefore finds that the bankruptcy court was correct in disqualifying Maggio, RGZ, and Bederson from employment in the Herman and Berkow matters. This result is consistent with those cases which have found common representation of a corporation and its principal shareholder(s), where there are inter-debtor claims, to be irreconcilable with the disinterestedness standard of the Bankruptcy Code. *See, e.g., In re Starr Broadcasting, Inc.*, 81 B.R. 835 (Bankr.D.N.J.1988); *In re Roger J. Au & Son, Inc.*, 64 B.R. 600 (N.D. Ohio 1986); *In re Hoffman*, 53 B.R. 564 (Bankr.W.D.Ark.1985).

## B. ADEQUACY OF DISCLOSURE

■ The bankruptcy court further found that Maggio and the professionals had "knowingly and intentionally" failed to disclose the existence of claims by BH & P against Herman and Berkow, and that this failure was motivated, at least in part, by the professionals' desire for greater fees. This Court can find no support in the record for that finding. The record shows that Maggio and the professionals had discussed the potential conflicts with the U.S. Trustee, but had been assured by him that the cases could properly be administered together. However unfortunate it may have been for the parties to accept the opinion of the U.S. Trustee and bypass the bankruptcy court, their actions certainly do not demonstrate an intent to withhold information from the court and thereby increase their potential fees. Indeed, the record reflects several occasions where the parties informed the court of the possibility of assertion of claims by BH & P against the individual debtors. For example, during a hearing on October 29, 1986, the bankruptcy court acknowledged:

> Allegations have been raised, including the information regarding transfer of $1.7 million from the debtor into limited partnerships in which [principals] of the debtor have an interest. It is clear that the [principals] of the debtor have cooperated with the Creditor's Committee in providing information about these transfers in the petition, but there is nothing in the affidavit submitted that refutes the fact that these transfers actually took place and a question mark is raised as to whether there is anything actionable. I make no specific findings in that regard. But note the question mark.

*See* Tr. 10/29/86, at 50. In short, nothing in the record supports the bankruptcy court's finding that Maggio and the professionals "knowingly and intentionally" withheld information from the bankruptcy court for the purpose of increasing their fees. Accordingly, this finding must be reversed as clearly erroneous. *See* B.R. 8013 ("Findings of fact shall not be set aside unless clearly erroneous").

■ Nevertheless, that there was no wilful breach of the duty to disclose does not mean that there was no breach at all. One of the more salient principles of bankruptcy law is that trustees and professionals who request court approval of employment have "a duty to disclose *actual or potential* conflicts of interest which may bear upon their qualification...." *In re Roberts,* 75 B.R. 402, 410 (D.Utah 1987) (emphasis added). *See also In re Glenn Elec. Sales Corp.,* 89 B.R. 410, 415 (Bankr. D.N.J.1988), *aff'd,* 99 B.R. 596 (D.N.J. 1988); *In re Marine Power & Equip. Co.,* 67 B.R. 643 (Bankr.D.Wash.1986). This duty of disclosure is broad, and compels "maximum disclosure of any 'connection' which may cause divided loyalty." *In re Glenn Electric,* 99 B.R. at 600 (quoting *In re Michigan General Corp.,* 78 B.R. 479, 483 (Bankr.N.D.Tex.1987)).

Because of the broad contours of this duty of disclosure, the bankruptcy court's determination that Maggio, RGZ, and Bederson had breached it was not clearly erroneous, and therefore must be upheld. Although the parties argue that they acted in good faith in applying for employment, and believed that they disclosed all that was necessary for the bankruptcy court to assess the propriety of their retention, such is not the measure of the duty of disclosure. The "subjective good faith efforts" of the parties are "irrelevant." *In re Glenn Electric,* 99 B.R. at 600. Rather, once a potential conflict is identified, as it was here, it must be disclosed to the bankruptcy court:

> In situations where counsel is aware of apparent conflicts which counsel believes are outweighed by other factors, the conflicts must be disclosed. The court then can exercise its independent judgment. The decision concerning the propriety of employment should not be left exclusively with counsel, whose judgment may be clouded by the benefits of the potential employment.

*In re Roberts,* 75 B.R. at 411.

■ Maggio and the professionals further argue that the full record, which included the schedules of asset transfers from BH & P to the individual debtors, should have made it "apparent" to the bankruptcy court that BH & P had claims against Herman and Berkow. It is not, however, the obligation of the bankruptcy court to search the record for possible conflicts of interest. *See In re Glenn Electric,* 99 B.R. at 599; *In re Roberts,* 46 B.R. 815, 839 (Bankr.D.Utah 1985). That obligation belongs to the party who seeks employment by the estate, and although it may not be so onerous as to require the party to raise with the court every imaginable conflict which may occur in a bankruptcy, it certainly compels disclosure where, as here, the party had contemplated and discussed a specific situation involving a potentiality for conflict. Accordingly, this Court can find no error in the bankruptcy court's determination that Maggio, RGZ and Bederson breached the duty of disclosure. This breach may have been the product of negligence, but "[n]egligence does not excuse the failure to disclose a possible conflict of interests." *In re Michigan General Corp.,* 78 B.R. at 482 (citing *In re Coastal Equities, Inc.,* 39 B.R. 304, 308 (Bankr.S.D.Cal.1984)).

## C. DENIAL OF INTERIM FEE APPLICATIONS

■ In disqualifying Maggio, RGZ, and Bederson in the Herman and Berkow matters, the bankruptcy court also denied their interim fee applications under 11 U.S.C. §§ 326(d) and 328(c). These sections of the Code do give the bankruptcy court discretion to deny allowance of compensation where a party has intentionally or negligently breached the duty of disclosure. *See, e.g., In re Flying E Ranch,* 81 B.R. 633, 637 (Bankr.D.Colo.1988) ("Where an attorney has failed to be forthright in disclosing potential conflicts of interest ... so that the court can make an informed judgment, denial of compensation has been recognized as being an appropriate remedy."); *In re Coastal Equities, Inc.,* 39 B.R. 304, 308 (Bankr.S.D.Cal.1984) ("If the duty to properly disclose is neglected, however innocently, the attorney performs services at his peril.").

Although it may be an appropriate exercise of discretion to deny compensation here, this Court cannot make that determination in the first instance, and cannot properly review the bankruptcy court's determination because it appears to have been based, at least in part, on the erroneous finding that the parties wilfully breached the duty of disclosure. *See* 103 B.R. at 567 ("The court concludes that the professionals shall be denied compensation ... because of their willful breach of the duty of disclosure."). Because the bankruptcy court may have reached a different result under §§ 326(d) and 328(c) had it not concluded that the parties' breach was wilful, this Court will remand the matter for the bankruptcy court to reconsider the fee applications in light of this Opinion.