In re Wm. J. O'CONNOR, Debtor.

In re Jane E. O'CONNOR, Debtor.

In re MAGIC CIRCLE ENERGY CORPORATION, Debtor.

Bankruptcy Nos. 84–02884–B, 84–02883–B and 85–01336–B.

United States Bankruptcy Court, W.D. Oklahoma.

Sept. 20, 1985.

Jack L. Kinzie and Bobbie T. Shell of Andrews Davis Legg Bixler Milsten & Murrah, Oklahoma City, Okl., for Wm. J. O'Connor, Jane E. O'Connor and Magic Circle Energy Corp.

Timothy Kline of Kline and Kline, Oklahoma City, Okl., for Magic Circle Energy Corp.

Michael Paul Kirschner and Jared D. Giddens of Hastie and Kirschner, Oklahoma City, Okl., for Wells Fargo Bank, N.A.

G. Blaine Schwabe, III of Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Okl., for Official Unsecured Creditors' Committee.

### MEMORANDUM OPINION AND ORDER

ROBERT L. BERRY, Bankruptcy Judge.

The matter before the Court concerns an Application to Withdraw as Counsel for Magic Circle Energy Corporation and/or as Counsel for Wm. J. and Jane E. O'Connor and Request for Instructions from the Court, filed by the law firm retained on behalf of debtors, Andrews Davis Legg Bixler Milsten & Murrah (hereinafter "counsel"). After due notice to all interested parties the matter came on for hearing. At which time the Court was apprised by counsel of the circumstances surrounding the instant application. In addition to counsel, also appearing at the hearing were counsel for Wells Fargo Bank, N.A. (hereinafter "Wells Fargo"), counsel for Magic Circle Energy Corporation, and counsel for the Official Unsecured Creditors' Commit-

tee. After hearing statement from all parties, the Court ordered that the matter would be decided on the briefs submitted plus any further written responses the parties desired to file.

Subsequently counsel for Magic Circle Energy Corporation (hereinafter "Magic Circle") filed its objection to any suggested withdrawal of counsel for the debtors wherein it adopted the position of counsel for the debtor estates. Counsel for the Official Unsecured Creditors' Committee has filed a statement urging that withdrawal of counsel from its representation of Magic Circle would, at this time, be counterproductive to the effort to achieve a reorganization of Magic Circle. It is further urged by the Committee that should counsel be required to withdraw from representation of any of the debtor estates it would be in the best interests of all parties in interest that counsel withdraw from its representation of the O'Connors, and not that of Magic Circle. Wells Fargo has filed a response to the instant application wherein it fully supports counsel's application to withdraw from its representation of Magic Circle. Furthermore, Wells Fargo has requested that any application of counsel for compensation for services rendered in its representation of Magic Circle in the bankruptcy proceeding be denied owing to what Wells Fargo perceives to be a "irreconcilable conflict of interests" as a result of counsel's joint representation of the O'Connors and Magic Circle. Finally, Wells Fargo has filed a motion affirmatively requesting that counsel be disqualified from its representation of Magic Circle.

Before we proceed with our discussion on this matter we feel constrained to point out that, as we have previously stated on more than one occasion, any conflict of interest or potential for conflict of interest is best recognized by those attorneys directly involved. It is they who are in the best position to assess and determine any potential conflict, fully cognizant of the mandates and strictures of the Code of Professional Responsibility. It should not devolve to the judiciary to pontificate on the mores of legal representation, and it is with no small measure of reticence and reluctance that we issue the following opinion. With the foregoing prefatory comments firmly in mind, a brief recitation of the facts leading up to the instant application and motion is in order.

Wm. J. O'Connor is President and Chairman of the Board of Magic Circle and together with his wife Jane E. O'Connor and other immediate family members owns a controlling interest in Magic Circle. Wm. J. and Jane E. O'Connor filed Chapter 11 proceedings in bankruptcy on September 28, 1984. The largest creditor of the O'Connors is MBank Dallas, N.A. (hereinafter "MBank").

On April 16, 1985, Magic Circle, having been unable to reach an agreement with regard to an out-of-court debt restructuring with its lender Well Fargo, instituted its reorganization proceedings.

Based on the affidavit of a shareholder of counsel it appears that counsel has represented Magic Circle for a period of years prior to the filing of its bankruptcy. Counsel had also undertaken to represent the O'Connors in their bankruptcy proceedings. Apparently it was not until immediately prior to the filing of the O'Connor bankruptcy proceedings that counsel became aware of the fact that the O'Connors owe Magic Circle approximately one million dollars. At the time counsel filed its application for employment as attorneys for the O'Connors counsel notified the Court that it represented Magic Circle; however, counsel would not undertake the representation of Magic Circle in connection with its claim against the O'Connors in the O'Connor proceedings and Magic Circle would be retaining, and in fact has retained, separate counsel in connection with such claim. When seeking employment as attorneys for Magic Circle in its bankruptcy proceeding, counsel disclosed its representation of the O'Connors in their bankruptcy proceedings. This Court, on April 16, 1985, entered an order approving the appointment of counsel as attorneys for Magic Circle and further authorizing the employment of separate

counsel to represent Magic Circle with respect to its claim against the O'Connors in the O'Connor bankruptcy proceedings. Two days after we entered our order approving appointment of counsel as attorneys for Magic Circle, counsel filed an amended affidavit disclosing the fact that various members of counsel own minor shares of Magic Circle in aggregate amounts of less than 1,000 shares out of a total 12,969,626 issued and outstanding shares.

Proceeding chronologically our next area of interest concerns the months of June, July and August of this year. Based on exhibits attached to the instant application it is quite obvious that concerns of a potential conflict attributable to counsel's dual representation engendered a substantial amount of correspondence, briefly summarized as follows:

1. June 18, 1985: letter from counsel addressed to attorney for Wells Fargo regarding initial application for interim compensation and reimbursement of expenses, requesting any objection of Wells Fargo thereto.

2. July 22 and 24, 1985: letters from counsel addressed to attorney for Official Unsecured Creditors' Committee regarding counsel's joint representation of the O'Connors and Magic Circle and requesting instructions regarding withdrawal of counsel from its joint representation.

3. August 1, 1985: letter from counsel addressed to attorneys for MBank requesting advice regarding withdrawal as counsel for the O'Connors and Magic Circle with respect to an adversary proceeding to be filed against the O'Connors and Magic Circle by MBank.

4. August 1, 1985: letter from counsel addressed to attorney for Unsecured Creditors' Committee regarding proposal concerning disqualification as objection to payment of interim compensation and reimbursement of expenses.

5. August 5, 1985: letter from attorney for Unsecured Creditors' Committee addressed to counsel offering a "counter-proposal" to that contained in letter of August 1.

6. August 12, 1985: letter from counsel addressed to attorney for Unsecured Creditors' Committee accepting "counter-proposal" contained in letter of August 5.

7. August 13, 1985: letter from attorney for Wells Fargo addressed to counsel 1) advising of objection of Wells Fargo to payment of interim compensation and reimbursement of expenses due to alleged representation of interests adverse to the debtor estate; and 2) advising that absent voluntary withdrawal, Wells Fargo would move for order disqualifying counsel from its representation of Magic Circle.

8. August 14, 1985: letter from attorney for MBank addressed to counsel agreeing to retention of counsel as attorney for Magic Circle and the O'Connors, with certain provisos not material for our purposes.

We should also note that on August 5, 1985, Wells Fargo filed its objection to the applications of counsel for interim compensation and reimbursement of expenses incurred in its representation of Magic Circle and which were filed on June 18, 1985, and July 22, 1985, which objection has not yet been ruled on by this Court. The objection is based on allegations that counsel is not a disinterested person and furthermore represents an interest adverse to the interest of the estate. It is also objected that the requests are unreasonable in nature, the most notable of which is the objection that time spent in researching and investigating potential conflicts of interest should not be charged to the estate.

The position of counsel for the O'Connors and Magic Circle can be stated as follows. While counsel does not believe a conflict exists, nor does it believe itself a disinterested person holding an interest adverse to the estates such as to preclude employment as counsel for the debtors pursuant to 11 U.S.C. § 327, counsel has requested the Court for instructions on how it should proceed in this matter. Further, that any potential for conflict arising from the dual representation of Magic Circle and the O'Connors vis-a-vis the claim of Magic

Circle against the O'Connors has been obviated through the employment of outside counsel to represent Magic Circle against the O'Connors. It concludes by alleging that the current request for disqualification urged by Wells Fargo is nothing more than the "obvious use of a litigation tactic."

The position of Wells Fargo is that there is an inherent conflict in representing an individual who is in bankruptcy while at the same time representing a corporation which is in bankruptcy, of which the individual is principal shareholder as well as chief executive officer. Moreover counsel may not be a "disinterested person" pursuant to 11 U.S.C. § 327 and defined at 11 U.S.C. § 101(13) in that 1) in 1982 a shareholder of counsel was an officer and director of Magic Circle; 2) some members of counsel currently own stock in Magic Circle; 3) the shareholder of counsel who was formerly an officer of Magic Circle had previously issued to Wells Fargo an opinion letter the subject of which is currently in litigation pending in the United States District Court for the Western District of Oklahoma; 4) a subsidiary of the debtor "may be considered" an investment banker under 11 U.S.C. § 101(13)(C); and 5) the shareholder/former officer "may have represented" such subsidiary in the capacity of investment banker. Wells Fargo concludes by stating it does not seek disqualification "as a litigation tactic, but as an expression of its desire to formulate a just, equitable resolution of the Magic Circle bankruptcy proceeding."

Having perhaps belabored somewhat the discussion of background events which culminated in the instant application and motion, we will now address the substantive issues, addressing first applicable sections of the Bankruptcy Code.

Employment of professional persons in a bankruptcy estate is governed by § 327 of the Bankruptcy Code. That section provides in pertinent part as follows:

> [T]he trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). While § 327 speaks of employment by the trustee, its proscriptions are equally applicable to a debtor-in-possession as per 11 U.S.C. § 1107.

Section 327 articulates a two-pronged test which must be met before a professional may be employed by the trustee/debtor-in-possession. First, the professional may "not hold or represent an interest adverse to the estate." Second, the professional must be a "disinterested person." The attorney for the debtor-in-possession must meet the requirements of § 327(a).

■ We will first discuss the question of whether counsel "holds or represents an interest adverse to the estate." This coincides somewhat with Wells Fargo's objection to the dual representation by counsel of the O'Connors and Magic Circle. We initially point out that the dual representation of an individual debtor and the corporation of which the individual debtor is a sole or major stockholder, is a circumstance which has occurred before in this district in a bankruptcy proceeding, albeit heretofore without objection. Most oftentimes it has occurred in the representation of an individual involved in the oil and gas industry who has formed a solely-owned corporation or one in which the individual is the controlling stockholder. As a result of machinations indigenous to the particular individual, from the perspective of savings to the respective estates through curtailment of administrative expenses, i.e. legal fees, it is advantageous that the same attorney, or firm, attempt to unravel the Gordian knot constructed by the debtor.

Wells Fargo has noted that in his capacity as officer, director and employee of Magic Circle, Wm. J. O'Connor received in 1984 the sum of $177,000.00 in the form of compensation and expense reimbursement and that O'Connor's total revenue from Magic Circle in 1984 was $2,900,000.00. *A*

*fortiori,* O'Connor is inherently biased towards remaining as a salaried employee of Magic Circle. Given the recitation of these figures, concedely substantial in amount, we feel comfortable in stating that it appears to us that Wells Fargo has some concerns as to whether O'Connor in his role of management with Magic Circle is representing the best interests of the debtor-in-possession estate. If indeed such is Wells Fargo's concern, the solution lies not in the disqualification of counsel from its representation of Magic Circle; rather, it lies with reliance on other sections of the Bankruptcy Code.

A further area of conflict according to Wells Fargo lies in the fact that inasmuch as the O'Connors are large stockholders of Magic Circle, which stock is the major asset of the O'Connor estates, an inherent bias exists with respect to the formulation of a plan of reorganization for Magic Circle wherein the equity security holders are treated preferentially, thereby concomitantly enhancing the success of the O'Connors' reorganization. While we do not doubt that the O'Connors would enjoy seeing a Magic Circle plan of reorganization which maximizes the potential for return in favor of the equity security holders, to imply that the reorganization efforts of Magic Circle will be channeled in favor of equity security holders to the exclusion of all other creditors ignores the practical reality of 11 U.S.C. § 1129. Section 1129(b) sets forth a standard by which a plan of reorganization may be confirmed notwithstanding the failure of an impaired class to accept the plan. With respect to a class of interests, which class is junior to that of the secured and unsecured classes, in order for the court to determine that a plan is fair and equitable with respect to that class of interests the plan must provide either for the receipt or retention on account of such interest property whose value as of the effective date of the plan is equal to the greatest of any liquidation preference, redemption price or value of the interest based on a going-concern valuation of the business. In the alternative, the plan may provide any treatment for a class of interests as long as no junior interests receive any property under the plan or retain any interest in the debtor. 11 U.S.C. § 1129(b)(2)(C)(i)(ii). As noted in the legislative history, this test essentially applies a relaxed version of the traditional absolute priority rule. The relaxed standard differs from the traditional by permitting senior classes that accept the plan "to give up value to junior classes so long as no dissenting intervening class receives less than the amounts of its claims in full." 124 Cong.Rec. H 11,103 (daily ed. Sept. 28 1978); 124 Cong.Rec. S 17,420 (daily ed. Oct. 6, 1978). The absolute priority rule is a fixed principle contained within the fair and equitable test. Under the rule, a class must be provided for in full before any junior class may participate, whether or not the class dissents. *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939); *Northern Pacific R.R. v. Boyd,* 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913). Given these requirements, we cannot attach much credence to. the theory of equity security holder preference.

Wells Fargo has cited to the Court the case of *In re Roberts,* 46 B.R. 815 (Bankr. D.Utah 1985) wherein the court undertook an ambitious and exhaustive treatment of the issue of attorney disqualification. *Roberts* does supply us with workable definitions of the terms "to hold an interest adverse to the estate" and to "represent an adverse interest".

To hold an interest adverse to the estate means (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

To represent an adverse interest means to serve as agent or attorney for any individual or entity holding such an adverse interest.

*In re Roberts,* 46 B.R. at 327.

We are aware of those cases which state that once employed by a corporation a law-

yer owes his allegiance to the corporation and not the stockholder, director or employee of the corporation. *See, e.g., Matter of King Resources Co.,* 20 B.R. 191 (D.Colo. 1982); *In re Chou-Chen Chemicals, Inc.,* 31 B.R. 842 (Bankr.W.D.Ky.1983). Those cases are clearly distinguishable on their facts and present obvious conflicts of interest. *Chou-Chen Chemicals* dealt with the disqualification of an attorney who was simultaneously representing the Chapter 11 debtor-in-possession and the co-owners of the corporation. The court noted that a hearing on the matter revealed the dispute "for what it was, a boardroom battle being waged in a Chapter 11 courtroom." *In re Chou-Chen Chemicals, Inc.,* 31 B.R. at 844. *King Resources* involved an attorney who had been simultaneously retained by an acquiring company and a target company in an abortive corporate takeover which resulted in the latter concern filing for bankruptcy reorganization. By their very nature, the respective interests were at odds. Disqualification should be mandated when an actual, as opposed to hypothetical or theoretical, conflict is present. This in no way precludes disqualification for a *potential* conflict. The test is merely one of a potential actual conflict. As we have previously noted, the attorney involved is in the best position to determine the existence, or lack thereof, of a conflict of interest. By placing the requirement on the judiciary to make determinations as to potential conflicts of interest, given that it is one-step removed inasmuch as it is difficult to place itself in the stead of the representing attorney, judicial determinations of potentiality for conflict are perforce less susceptive to absolute ascertainment. Having considered the above definitions expressed in *Roberts,* and applying them to the circumstances at bar, we do not find that counsel "represents or holds an interest adverse to the estate" such as to proscribe the dual representation of the O'Connors and Magic Circle.

As a final matter with respect to our discussion of the existence of a conflict of interest, Wells Fargo urges that as the O'Connors occupy the status of debtors of Magic Circle, such fact alone demonstrates adversity of interest citing *In re Roberts,* 46 B.R. 815 (Bankr.D.Utah 1985).

As *Roberts* is quick to point out, those changes in the Bankruptcy Code which occurred with passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Public Law 98–353, 98 Stat. 333 (July 10, 1984) were not applicable to the *Roberts* case. Amended § 327(c), which in our case *does* apply, provides as follows:

> In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor, in which case the court shall disapprove such employment if there is an actual conflict of interest.

Clearly counsel may represent Magic Circle in its capacity as a creditor of the O'Connors, provided there is no objection by another creditor in which case the court will need to determine that such representation involves an actual, rather than theoretical, conflict of interest. Given Wells Fargo's objection we would normally need inquire into the existence of an *actual* conflict of interest. We need not do so however, albeit our previous discussion leaves us with no doubt on the issue, due to the separate representation of Magic Circle in its claim against the O'Connors. While counsel, absent an actual conflict of interest as determined by the court, was entitled to represent Magic Circle as a creditor of the O'Connor estates, out of a plethora of caution it took the additional step of requiring Magic Circle to retain separate representation in regard to its claim against the O'Connors. Further we read *Roberts* as having required disqualification on a number of grounds: the corporate debtor was a creditor of an individual debtor, the other individual debtor was a creditor of the corporate debtor, the corporate debtor owed the law firm for legal services unrelated to the bankruptcy case and the law firm failed to disclose, either in its applications for appointment as counsel or in its fee applica-

tions the existence of any of its conflicting involvements. When taken *in toto* the court felt compelled to require disqualification. The matter at bar differs both on the present state of applicable statutory law as well as on the facts of the case.

Having decided the issue of adverse interest, we turn our attention to whether counsel is a "disinterested person".

The term "disinterested person" is defined by the Bankruptcy Code at 11 U.S.C. § 101(13) as follows:

(13) "disinterested person" means person that—

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason[.]

The majority of Wells Fargo's contentions as to the "disinterestedness" of counsel do not convince us that counsel is not a "disinterested person".

■ With respect to the argument that counsel is a "disinterested person" owing to the fact that a shareholder of counsel was an officer and director of Magic Circle in 1982, Magic Circle filed for reorganiza-

tion under the Bankruptcy Code on April 16, 1985. As its petition was filed some three years after the resignation of the shareholder, the two year proscription of § 101(13)(D) has been satisfied.

Next Wells Fargo urges that inasmuch as this same shareholder/officer issued a opinion letter to Wells Fargo, the subject of which is currently in litigation in district court, and that in order to resolve the district court litigation Wells Fargo may be compelled to pursue counsel and/or the shareholder regarding the shareholder's opinion letter, counsel's disqualification from representing Magic Circle in its bankruptcy proceedings is required.

First we must note that such a hypothesis appears to be one of "disqualification on speculation", a precept we have not heretofore seen articulated. Second, what Wells Fargo may or may not do appears to us to be the concern of the district court and is properly to be handled by that court when and if the question should arise.

Wells Fargo has further raised the issue of whether a subsidiary of Magic Circle is an investment banker under § 101(13)(C) and whether the shareholder/former officer may have represented the subsidiary in that capacity. Other than the allegation that the subsidiary "may be considered" an investment banker and the shareholder/former officer "may have represented" the subsidiary, we have been furnished with absolutely no tangible evidence on this alleged question. Nor has Wells Fargo even attempted to demonstrate that such representation occurred within three years of the filing of the bankruptcy petition. Once again we are offered to disqualify based on speculation. We decline the invitation.

■ Finally we reach our greatest area of concern: whether counsel is not a "disinterested person" due to its ownership of stock in Magic Circle, a violation of § 101(13)(A).

Counsel does not deny its ownership interest in Magic Circle. It clearly revealed such interest in its disclosure of April 18,

1985, two days after Magic Circle's petition for relief under Chapter 11 was filed. As stated in the affidavit of April 18, various members of counsel own interests in Magic Circle which aggregate in an amount of less than 1,000 shares out of a total of 12,969,626 issued and outstanding shares. The Court has not been provided with a schedule specifying increments of ownership; however, by way of the aforementioned affidavit of shareholder we are informed the value aggregates less than $500.00.

According to *Collier* the tests of § 101(13) "are to be rigidly applied." 2 *Collier on Bankruptcy* ¶ 327.03 at 327–13 (15th ed. 1985) (citation omitted). Subsection (E) is "broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code." *Id.* at 327–19 (citations omitted). "[A] 'disinterested' person should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters." *Matter of Codesco, Inc.*, 18 B.R. 997, 999 (Bankr.S.D.N.Y.1982) (citing *In re Realty Associates Securities Corporation*, 56 F.Supp. 1007 (E.D.N.Y.1944)).

While the reported decisions regarding the issue of "disinterestedness" are voluminous, there is little on the topic of an attorney representing the debtor while the attorney is an equity security holder of the debtor. We have, however, been cited to the case of *In re Anver Corp.*, 44 B.R. 615 (Bankr.D.Mass.1984), which appears supportive of Wells Fargo's contention.

*Anver* involved the application for employment as debtor's counsel of an attorney who was an equity security holder of approximately one percent of the debtor. The court did not agree with the argument that the ownership of approximately one percent of the debtor's stock is *de minimus* such as to satisfy the test of "disinterestedness". However, the court did not rest its ruling *solely* on that issue. Rather the court found that "stock ownership was consistent with its [debtor's attorney] ac-

tive role in the corporation. Indeed, counsel noted that the purpose of the ownership was 'in order to further enhance the company's relationship with counsel'." *In re Anver Corp.*, 44 B.R. at 617 (emphasis supplied).

While we are in agreement that the tests of 11 U.S.C. § 101(13) are to be applied rigidly, we also believe they should not be applied blindly. To find "disinterestedness" solely due to the existence of a slight degree of interest possessed by debtor's counsel in the debtor stops short of the proper analysis. The question should not be, does counsel possess a slight interest in the debtor, but does counsel possess an interest such as would color the requisite independent judgment and impartial attitude. Naturally, a large ownership percentage in the equity security of the debtor would be *prima facie* evidence of "disinterestedness". We need not at this time determine at what point the percentage would constitute *prima facie* evidence. While we believe that under the proper set of facts a *de minimus* ownership interest could satisfy the test of "disinterestedness", the matter at bar involves even less than a *de minimus* interest; it involves an interest that can only be characterized as infinitesimal. We conclude that counsel satisfies the "disinterestedness" test.

■ Having concluded that counsel need not be disqualified from its joint representation of the O'Connors and Magic Circle due to the constraints of the Bankruptcy Code, we must now address the question of whether counsel has violated any of the provisions of the Code of Professional Responsibility, adopted in Oklahoma by way of Okla.Stat. tit. 5, ch. 1, App. 3 (1984). Wells Fargo has urged that counsel has violated Canons 1, 4, 5, 6, 7 and 9 of the Code of Professional Responsibility.

Canon 1 provides that a lawyer should assist in maintaining the integrity and competence of the legal profession. Canon 4 provides that a lawyer should preserve the confidences and secrets of a client. Canon 5 provides that a lawyer should exercise independent professional judgment on be-

half of a client. Canon 6 provides that a lawyer should represent a client competently. Canon 7 provides that a lawyer should represent a client zealously within the bounds of the law. Canon 9 provides that a lawyer should avoid even the appearance of professional impropriety. With respect to Canons 1, 4, 5, 6 and 7, we have been presented with nothing which would indicate a violation of those Canons. Canon 9 is perhaps the most important of these due to its focus on appearances and the public perception of lawyers in general.

In applying Canon 9, a court "must view the conduct as an informed and concerned private citizen and judge whether the reputation of the Bar would be lowered if the conduct were permitted." *United States v. Miller*, 624 F.2d 1198, 1202 (3rd Cir.1980). In order for the Court to disqualify under Canon 9 there must be a showing that there is a "reasonable possibility of the occurrence of 'specifically identifiable appearance of improper conduct,' and that the 'likelihood of public suspicion or obloquy outweighs the social interest' in obtaining counsel of one's choice." *In re Corregated Container Antitrust Litigation*, 659 F.2d 1341, 1345 (5th Cir.1981) (quoting *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1032 (5th Cir.1981)). With these criteria in mind, we do not find a violation of Canon 9 present in the circumstances at bar.

While we believe we adequately have discussed the issue of disqualification both from the standpoint of the Bankruptcy Code and the Code of Professional Responsibility, we feel compelled to comment on two other items.

The first being that which most separates the instant facts from other cases involving disqualification. Those cases may be categorized as ones involving disqualification upon application for employment as debtor's counsel, *see, e.g., In re Anver*, 44 B.R. 615 (Bankr.D.Mass.1984); *Matter of Codesco, Inc.*, 18 B.R. 997 (Bankr.S.D.N.Y.1982); *In re Sambo's Restaurants, Inc.*, 20 B.R. 295 (Bankr.D.D.Cal. 1982), and ones involving disqualification

upon the request of attorney fees, *without having previously disclosed* any potential areas of conflict. *See, e.g. In re Roberts*, 46 B.R. 815 (Bankr.D.Utah 1985), *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160 (Bankr.D.Ariz.1984); *Matter of Cropper Co., Inc.*, 35 B.R. 625 (Bankr.M.D. Ga.1983). *From the very outset* counsel has revealed the exact nature of its relationship with the O'Connors and Magic Circle. It has been revealed to this Court and to all interested parties. To fall back on to that old legal chestnut, bankruptcy courts are courts of equity. *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). Even had we found some area of conflict, to permit the accrual of legal fees and expenses only to grant a motion to disqualify debtor's counsel at some future date, strikes us as most inequitable indeed. It is undoubtedly for just such a reason that 11 U.S.C. § 328(c) was enacted. This subsection provides that a court "may deny allowance of compensation and reimbursement of expenses" should the employment of a professional person fail to meet the two-pronged test of § 327. Clearly, it is within the exercise of a court's sound discretion to deny such an award. The denial of an award is permissive in nature, not mandatory. Query whether the failure to meet either of the requirements of § 327 necessarily requires a finding of a violation of Canon 9 of the Code of Professional Responsibility and if it does would a violation of Canon 9 moot any applicability of § 328(c)? Fortunately the question is not before us.

Regretably we feel compelled to comment on the allegation that the present motion to disqualify is merely a litigation tactic. *See In re O.P.M. Leasing Services, Inc.*, 16 B.R. 932, 934 (Bankr.S.D.N.Y.1982) ("[I]t is not surprising that occasionally a team or player, at some point in time, possibly motivated by concern for mid-season standings or for psychological tactical advantage, diverts the focus from the mainstream of the litigating process to concerns that are not truly germane to the ultimate merits of the particular proceeding at hand.") We would like to be able to state

that we find no basis for such an allegation. Rather than expressing any opinion on the allegation, we simply note the following: Magic Circle has been granted until the first of October in which to exclusively file its plan of reorganization. Wells Fargo's assertions to the contrary, disqualification of counsel at this time would be crippling to such efforts. "Under these circumstances the possible delay and additional expense caused by replacement are clearly outweighed by considerations of the integrity of the judicial process." *Bohack Corp. v. Gulf & Western Industries, Inc.,* 607 F.2d 258, 263–64 (2d Cir.1979). Furthermore, Wells Fargo was aware of the "conflict" at bar almost from the inception of these bankruptcy proceedings. Even more damaging to Wells Fargo's asserted desire for an "equitable resolution" is the fact that it has previously sought the recusal of the undersigned bankruptcy judge. Our denial of the motion to recuse having recently been affirmed by the district court, one can only note with some small degree of circumspection the timing of the instant motion.

As a final matter, we touch briefly on the issue of counsel's interim fee applications. Wells Fargo had sought the denial of the requested fees and expense reimbursements *in toto.* Our foregoing discussion disposes with Wells Fargo's objection as it relates to the issue of disqualification. Wells Fargo was the only party objecting to the award of interim compensation. The balance of Wells Fargo's objections will be taken up at the hearing currently scheduled for September 23, 1985, at 2:30 p.m.

Accordingly, based on all of the above the following is hereby ordered: the firm of Andrews Davis Legg Bixler Milsten & Murrah is hereby directed to continue its representation of Wm. J. O'Connor, Jane E. O'Connor and Magic Circle Energy Corporation in their respective bankruptcy proceedings; the firm of Kline and Kline is directed to continue its representation of Magic Circle Corporation with respect to its claim against the O'Connors; the motion for disqualification of Andrews Davis Legg Bixler Milsten & Murrah filed by Wells Fargo Bank shall be and hereby is, denied. The objections of Wells Fargo to the pending applications for interim compensation and reimbursement of expenses are scheduled for hearing on September 23, 1985, at 2:30 p.m., at which time the Court will consider said applications.

Pursuant to Bankr.R. 7052 the foregoing constitute our findings of fact and conclusions of law and comprise the judgment and order of this Court.