**In re PROFESSIONAL DEVELOPMENT CORPORATION,
Bk. No. 90–31484–D.**

**Thomas H. CAMPBELL, d/b/a Hi-Tech Leasing, Bk. No. 90–31483–D, Appellants,**

**v.**

**E. Franklin CHILDRESS, Jr., United States Trustee, Appellee.**

**No. 91–2760 Ml.**

United States District Court,
W.D. Tennessee, W.D.

May 1, 1992.

Jennie D. Latta, James N. Guill, McDonnell Boyd, Memphis, Tenn., for appellants.

T. Patrick Tinker, Executive Office of the U.S. Trustee, Washington, D.C., Madalyn C. Scott, Office of the U.S. Trustee, Memphis, Tenn., for appellee.

## ORDER REVERSING BANKRUPTCY COURT'S DECISION

McCALLA, District Judge.

This matter is before the Court on appeal by Professional Development Corporation and Thomas H. Campbell from the decision of the bankruptcy court disqualifying the firm of McDonnell Boyd as counsel for both Professional Development Corporation ("PDC") and Thomas H. Campbell, jointly administered Chapter 11 cases under 11 U.S.C. § 101, *et seq.* The brief of the appellants was filed October 15, 1991, the brief of the appellee was filed November 18, 1991, and the appellants' reply brief was filed December 5, 1991. This Court heard oral argument on March 19, 1992.

This case presents the question of whether legal counsel can simultaneously represent a corporation and its sole stockholder and CEO in jointly administered Chapter 11 cases. The appellants assert that the bankruptcy court erred in disqualifying McDonnell Boyd from the dual representation and that findings of fact 4(A)—(G) and the inferences drawn therefrom are clearly erroneous. The appellee argues that McDonnell Boyd cannot represent both PDC and Campbell simultaneously because the debtors hold an interest adverse to one another, which would preclude dual representation. For the reasons set forth below, the decision of the bankruptcy court, filed June 21, 1991, is REVERSED.

Mr. Campbell and PDC filed their respective petitions for reorganization under Chapter 11 of the Bankruptcy Code on December 14, 1990. Mr. Campbell is the president and CEO of PDC and the sole stockholder. Both debtors have practically the same creditors, and PDC's creditors are secured with guarantees from Mr. Campbell. Each of the debtors remained in possession of its bankruptcy estate as a "debtor-in-possession." 11 U.S.C. § 1101(1). As allowed by 11 U.S.C. §§ 327 and 1107(a), the debtors, with court approval, filed their application to employ McDonnell Boyd as bankruptcy counsel.

On December 18, 1990, the bankruptcy court approved the debtors' applications to employ McDonnell Boyd as counsel. On

March 20, 1991, the United States Trustee filed a motion and supporting memorandum to disqualify McDonnell Boyd from dual representation of the debtors. The bankruptcy court conducted a hearing on this motion on May 30, 1991, and entered its order on June 21, 1991, disqualifying McDonnell Boyd from representing both debtors simultaneously.

■ Pursuant to Federal Rule of Bankruptcy Procedure 8013, findings of fact shall not be set aside unless "clearly erroneous." Conclusions of law rendered by the bankruptcy court are subject to *de novo* review. *In re Caldwell*, 851 F.2d 852, 857 (6th Cir.1988). Under the "clearly erroneous" standard, as long as "the judge's inferences are reasonable and supported by the evidence, they will not be overturned." *In re Southern Indus. Banking Corp.*, 809 F.2d 329, 331 (6th Cir. 1987) (citing *In re Osborne*, 42 B.R. 988, 995 (Bankr.W.D.Wis.1984)). Also, the bankruptcy court's findings "should be comprehensive and relevant to the issues so as to provide a rational basis for the trial court's decision."[1] *Sanders v. Dorris*, 873 F.2d 938, 942 (6th Cir.1989). The clearly erroneous standard, however, does not apply to review of mixed questions of the law and fact. *Graham v. Lennington*, 74 B.R. 963, 965 (Bankr.S.D.Ind.1987). The bankruptcy court's findings to the contrary are clearly erroneous.

■ The bankruptcy court relies heavily on its findings 4(e) and (f),[2] whereby Mr. Campbell listed monies as due and owing from PDC and PDC listed Mr. Campbell as an unsecured creditor for the same amount, as support for its conclusion that an "actual and inescapable" conflict of interest exists which would warrant disqualification. The bankruptcy court also stated that "actual" and "potential" conflicts exist between the entities, "in that there is a debtor creditor relationship."

The appellants contend that the bankruptcy court failed to recognize that a debtor-creditor relationship does *not* exist between Mr. Campbell and PDC and that, when construing 11 U.S.C. §§ 327(a) and 101(14)(E) in conjunction with § 327(c), they could only be disqualified for representing an interest adverse to the estate if an *actual* conflict of interest existed between the two estates. The appellee agrees that section 327(c) dictates that a professional is not disqualified from employment solely because counsel represents a creditor absent an *actual* conflict being shown, after objection by the Trustee or another creditor. However, the appellee argues that McDonnell Boyd's disqualification goes beyond the debtor-creditor relationship and that there were actual as well as potential conflicts of interest. This Court agrees with the appellants that PDC and Mr. Campbell do *not* have a creditor-debtor relationship. Accordingly, § 327(c) does not apply in the instant case.[3]

---

1. The Advisory Committee's Notes to Bankruptcy Rule 8013 state that the Rule conforms with the appellate review standard to FRCP 52. *Sanders v. Dorris* is applicable here since it interprets the standard under FRCP 52.

2. Bankruptcy court's findings of fact 4(e) and (f) state:
   (e) PDC'S schedules list Thomas H. Campbell as an unsecured creditor with an indebtedness of $278,377.78 or approximately 26% of PDC's total unsecured debt.
   (f) Thomas H. Campbell' Schedule A-3 lists $278,377.78 as due and owing from Professional Development Corporation. It has been asserted that these funds were characterized incorrectly in the schedules and should have been shown as capital contributions.Bankruptcy FN 3
   [Bankruptcy FN 3] Debtor avers that amended schedules have been filed.

3. Section 327(c) states:
   (c) In a case under Chapter 7, 12, or 11 of this Title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States Trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.
   Thus, an attorney who represents a debtor-in-possession may be employed by or represent a creditor of the estate. However, if a creditor or the United States Trustee objects because of the attorney's employment or representation of a creditor, then the attorney must be disqualified if there is an *actual* conflict of interest. Therefore, notwithstanding the requirements of § 327(a) and § 101(14), disqualification is required if, because of employment or representation of a creditor, there is an *actual* conflict of

The bankruptcy court determined that PDC and Mr. Campbell had a debtor-creditor relationship based on the original schedules filed by the estates, even though Mr. Campbell and PDC had filed amendments to the schedules before the Bankruptcy Court issued its decision. The amendments recharacterized the debt owing to Mr. Campbell as a capital contribution. Although the bankruptcy court in footnote 3 and findings of fact 4(f) acknowledged that the debtor "avers that amended schedules have been filed," the Court did not so find and did not correct finding of fact 4(e) and (f) in accordance with the changes. Therefore, findings of fact 4(e) and (f) are clearly erroneous in that they do not accurately reflect the amendments made to the debtors' respective schedules.

Under other circumstances, where the president and stockholders are different individuals, such a change might indicate the presence of a conflict of interest. In this case, apparently no creditors have objected to the reclassification of this obligation, and it is unrealistic to think that Mr. Campbell, as the sole shareholder and CEO, could get repaid before any of PDC's creditors. Since the creditors of PDC and Mr. Campbell are substantially the same, and because the creditors of PDC are secured with guarantees from Mr. Campbell, claims of conflicts of interest are for all practical purposes eliminated. Accordingly, the bankruptcy court's conclusions, that there were conflicts because of the debtor-creditor relationship, are in error.

Additionally, the bankruptcy court's conclusion that McDonnell Boyd is disqualified from dual representation because it is "not disinterested," as required by the Bankruptcy Code, because it is "representing an interest [that of Mr. Campbell] which is materially adverse" to PDC's interest, is in error not only because of the erroneous findings, but also as a matter of law. The bankruptcy court incorrectly equated *holding* an interest materially adverse to the

estates by reason of a direct or indirect relationship with the debtor under § 101(14)(E), with *representing* an interest adverse to the estate under § 327(a). A close reading of the statutes indicates that § 101(14)(E) defines "disinterested" as "having" an interest materially adverse to the estate and not "representing" such an interest, as more fully discussed below. *See, In Re Hurst Lincoln Mercury, Inc.,* 80 B.R. 894, 896 (Bankr.S.D. Ohio 1987).

The Bankruptcy Code § 327(a) sets forth a two-pronged test for employment of counsel. Pursuant to 11 U.S.C. § 1107(a), this section is applicable to a debtor-in-possession. Section 327(a) provides, in pertinent part:

> (a) Except as otherwise provided in this section, the trustee [debtor-in-possession], with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee [debtor-in-possession] in carrying out the trustee's [debtor's] duties under this Title.

Thus, the professional must be a "disinterested person," and cannot "hold or represent an interest adverse to the estate." The definition of "disinterested person" is defined at 11 U.S.C. § 101(14). This section sets forth the various characteristics which cause a person to fail to be disinterested. Subparagraphs (A) through (D) enumerate specific characteristics for which a person can fail to be disinterested. For example, a person will fail to be disinterested if he/she is an "insider." 11 U.S.C. § 101(14)(A). Generally, these characteristics are defined. *See, e.g.,* 11 U.S.C. § 101(31) (Defining insider). Subparagraph (E), however, is a more general provision and uses terms which are less precisely delineated. The bankruptcy court determined that McDonnell Boyd apparently passed the disinterested test under

interest. Some Courts have held that where the conflict is "actual," disqualification is required, but if the conflict is "potential," disqualification is within the discretion of the Court. *In re BH & P, Inc.,* 103 B.R. 556, 566 (Bankr.D.N.J.1989). This decision does not reach that issue.

§ 101(13)(A) thru (D),[4] but did not meet the test under subsection (E).

Section 101(14)(E) provides that a

"disinterested person" means [a] person that ... (E) does not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

Consequently, counsel can violate the "disinterested" requirements if he or she holds an interest materially adverse to the estate or to the interest of a class of creditors or equity security holders. Such a "materially adverse" interest may arise by reason of any relationship to or connection with the debtor or "for any other reason."

Although the definition of "disinterested person" in § 101(14)(E), that a person may not have an "interest materially adverse to the interests of the estate" has some resemblance to the language of § 327(a), which provides that a professional cannot "hold or represent an interest adverse to the estate," the two requirements are not co-extensive. Section 327(a) precludes employment of attorneys *holding or representing* an interest adverse to the estate, whereas under subparagraph (E) counsel would fail the disinterested test if he or she *has* an interest that is *materially adverse* to the interests of the estate as well as any class of creditors or equity holders.

In this case, there is no indication that McDonnell Boyd has an interest materially adverse to the interest of PDC or Mr. Campbell by reason of any direct or indirect relationship to the debtors under § 101(14)(E). The bankruptcy court's holding to the contrary and analysis based on the relationship between a limited partner and a general partner in determining that McDonnell Boyd was not disinterested, is also in error.

The dual representation of a corporation and its sole shareholder and CEO should not be confused with the impediments to representation of both a general partner and a limited partnership debtors in jointly administered bankruptcies. Such dual representation has often been disallowed in limited partnership situations. *See, e.g., In re W.F. Development Corp.*, 905 F.2d 883 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1311, 113 L.Ed.2d. 245 (1991).

Courts have reasoned that the general partner of the limited partnership will be a potential target of claims by the limited partnership debtors since the general partner is responsible for the day-to-day affairs of the business. *In re McKinney Ranch Associates*, 62 B.R. 249, 255 (Bankr. C.D.Cal.1986). However, this reasoning is inapplicable to Mr. Campbell and PDC in that Mr. Campbell's decisions with respect to day-to-day affairs and policies are merged with his interests as the *sole* shareholder. As the CEO and sole shareholder of PDC, his fiduciary duties were owed to himself, the *sole* equity holder. The creditors of PDC and Mr. Campbell are substantially the same, and Mr. Campbell is the guarantor for the debts owed by PDC to its creditors. As a result, for all practical purposes, claims of conflicts of interest are eliminated.

Although some courts have held that simultaneous representation of a debtor corporation and its individual shareholders was improper, *See, e.g., In re Lee*, 94 B.R. 172 (Bankr.C.D.Cal.1988) (simultaneous representation of a corporate debtor and its sole shareholder was not possible because of joint debts owing by the respective estates), this Court agrees with those cases involving sole shareholders and a corporate debtor that have approved dual representation by counsel due to the lack of actual conflicts and due to a unity and identity of interests between the debtors. *In re O'Connor*, 52 B.R. 892 (Bankr. W.D.Okla.1985); *In re Huddleston*, 120 B.R. 399 (Bankr.E.D.Tex.1990). As the

---

**4.** Renumbered by the 1990 amendments. The current number for this section is 101(*14*)(A) thru (D).

court pointed out in *O'Connor* concerning such dual representation,

> [D]ual representation of an individual debtor and the corporation of which the individual debtor is a sole or major stockholder, is a circumstance which has occurred before in this district in a bankruptcy proceeding, albeit heretofore without objection ... as a result of machinations indigenous to the particular individual from the prospective of savings to the respective estates through curtailment of administrative expenses, *i.e.*, legal fees, it is advantageous that the same attorney, or firm, attempt to unravel the gordian knot construed by the debtor.

*In re O'Connor*, 52 B.R. at 895.

Additionally, the *Model Code of Professional Responsibility* recognizes that an attorney may represent a stockholder in his or her individual capacity as well as the corporate client.

> Occasionally, a lawyer for an entity is requested by a stockholder, director, officer, employee, representative, or other person connected with the entity to represent him in an individual capacity; in such case the lawyer may serve the individual only if the lawyer is convinced that differing interests are not present.

*Model Code of Professional Responsibility*, EC5–18 (1980). The appellee's rely on Canon 5 of the Rules of Professional Responsibility which suggests that the lawyer must exercise independent professional judgment on behalf of a corporation and not on behalf of the individual stockholders, directors, officers or employees. However, when applied to the situation at bar where the president and CEO of the corporation is also the *sole* shareholder, the conflict is, at best, in theory only. The Bankruptcy Court correctly points out that "Thomas H. Campbell is the CEO of both entities and will be the person giving orders to which ever counsel ultimately represents the debtors."

In further support for disqualifying McDonnell Boyd, the bankruptcy court relies on its findings to support its conclusion that potential conflicts of interest exist between Mr. Campbell and PDC. The Court stated that "there *may* very well be preferences, fraudulent conveyances, avoidable transfers ... which should be pursued for the benefit of creditors." (Emphasis added.) Presumably the Court was referring to its findings of fact 4(a), (b), (c) and (g),[5] to suggest that Mr. Campbell had mismanaged corporate assets, as support for its conclusion regarding potential conflicts.

■ Although these findings would have been cogent if the motion before the Bankruptcy Court had been for the appointment of a trustee, they are not relevant with respect to whether or not McDonnell Boyd should be disqualified from dual representation. When management acts inappropriately and mismanages corporate assets, the solution is to remove management, which in this case could be accomplished by appointing a trustee.[6] To the extent that the

---

5. Bankruptcy court's findings of fact 4

(a) Mr. Campbell's personal company, Campbell Properties, now known as Campbell Management Company, has been using Professional Development Corporation ("PDC") space without compensating PDC for the use of said space. Campbell Management will begin paying PDC $425.50 per month for the use of this space.<sup>Bankruptcy Court FN 2</sup>

(b) In 1990 PDC paid expenses in the approximate amount of $8,417.40 for the use of Mr. Campbell's duplex in Vail, Colorado. While Mr. Campbell testified that PDC used the condominium solely for business purposes, Mr. Campbell testified the use was primarily personal.

(c) Testimony at trial revealed that some $87,000 was taken from Mr. Campbell's personal safely deposit box and deposited into PDC accounts on the assumption that the monies accumulated therein were actually funds of PDC. It appears that the $87,000 was deposited into several accounts and eventually transferred into PDC accounts.

(g) Mr. Thomas Campbell testified at his meeting of creditors that PDC has been paying his expenses in the past without issuing him a W–2 form.

[Bankruptcy Court FN 2] Campbell Management will begin paying PDC 422.5. per month for the use of this space. However, there has been no provision payment of back rent to PDC.

6. Since the Bankruptcy Court did not appoint a trustee to represent either estate, and did not find Mr. Campbell unsuited to continue managing PDC through reorganization, this Court does not reach that issue.

bankruptcy court's conclusion, regarding *potential* conflicts, relies on irrelevant findings, it is in error.

In addition, the bankruptcy court's determination that "potential conflicts" exist is also in error, in so far as it may relate to an analysis under § 327(a). *Holding or representing* and interest adverse to the estate, under § 327(a), has been interpreted by some courts to mean "possessing, or serving as an attorney for a person possessing either an 'economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an *actual or potential* dispute in which the estate is a rival claimant....'" *Roger J. Au. & Son v. Aetna Ins. Co.*, 64 B.R. 600, 604 (N.D. Ohio 1986) (quoting *In re Roberts*, 46 B.R. 815, 822–23 (Bankr.D. Utah 1985) (emphasis added).

Although there may be circumstances where a potential dispute could result in disqualification of counsel, the facts before this Court present a situation where the disputes, if any, exist in theory. Since the debtor-creditor relationship does not exist, there are no conflicts of interest based on that relationship. Mr. Campbell as the sole shareholder and CEO, is for all practical purposes PDC. As previously stated, the creditors of the estates are substantially identical and Mr. Campbell is the guarantor for the creditors of PDC. The debtors have also filed a joint plan which may amount to a substantive consolidation of the two estates. According, McDonnell Boyd's representation of Mr. Campbell and PDC would not lessen the value of either bankruptcy estate and would not, based on the facts before this Court, create a *potential* dispute. Therefore, the firm is not disqualified under the first prong of § 327(a).

The appellants also dispute findings of fact 4(d) which relates to a preferential transfer by PDC to the law firm of Glassman, Jeter for services regarding litigation expenses. The bankruptcy court in its finding of fact stated that "[I]f the law-

suits were successful, Thomas H. Campbell will benefit personally from this representation." The appellant asserts that the transfer benefited both PDC and Mr. Campbell and is simply a "classic preferential transfer." This Court agrees.

PDC and Mr. Campbell owed Glassman & Jeter over $100,000 in legal fees. Glassman & Jeter had no security. PDC, through documents executed by its president, Mr. Campbell, transferred a mortgage interest to Glassman & Jeter to secure this debt within 90 days of the filing of the debtors' petitions. Since this transfer was for fees owed by PDC as well as Mr. Campbell, the transfer benefited both of the debtors. The bankruptcy court's finding is clearly erroneous in that it does not indicate that PDC would benefit from the representation by Glassman & Jeter, if the lawsuits were successful. Thus, there is not a conflict based on this transfer. However, as noted in the appellant's Reply Brief, the bankruptcy estates can avoid this transfer because it was within 90 days of the date of filing of the petitions. 11 U.S.C. § 547(b).

In conclusion, McDonnell Boyd is not disqualified from the dual representation of PDC and Mr. Campbell, its sole shareholder and CEO. The firm does not "hold or represent an interest adverse to the estate" and is "disinterested." The bankruptcy court's findings of fact and conclusions of law which are to the contrary, are in error. This is not to say that McDonnell Boyd could never have a conflict that would prohibit it from representing the debtors,[7] but the facts before this Court do not support the harsh remedy of disqualification. Accordingly, the decision of the bankruptcy court is REVERSED.

SO ORDERED.

---

7. In fact McDonnell Boyd provided this Court with a letter dated March 24, 1992, indicating that it had to withdraw from representation due to a conflict of interest—the firm had been served with a complaint naming it, Mr. Campbell and one of its partners as co-defendants with certain other entities, including a partnership of which Mr. Campbell is a partner.