**In re PERRYSBURG MARKETPLACE COMPANY, Debtor.**

**Bankruptcy No. 94–32588.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Nov. 23, 1994.

John Gustafson, H. Buswell Roberts, Toledo, OH, for debtor.

Amy Leizman, Office of U.S. Trustee, Cleveland, OH.

## OPINION AND ORDER DENYING APPLICATION TO EMPLOY ATTORNEY WITHOUT PREJUDICE

Judge WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court on Perrysburg Marketplace Company's (the "DIP") application to employ the law firm of Nathan & Roberts (the "Firm") as attorneys for the DIP (the "Application") and the United States Trustee's ("UST") objection thereto. The Court finds that the Application is not well taken and should be denied without prejudice.

### FACTS

The DIP filed a petition under chapter 11 of title 11 on November 10, 1993 in the United States Bankruptcy Court for the Middle District of Pennsylvania which case was subsequently transferred to this Court.

The DIP paid the Firm a retainer of $8,352.31.

The UST has objected to the Application based on the Firm's alleged "potential if not actual conflict of interest in representing the [DIP]". *See* Objection of the United States Trustee to Application to Approve Employment of Attorney, p. 2, para. 5. The UST bases this objection on the facts disclosed in the Application which indicate that:

> [The Firm] represented Joseph H. Swolsky [ ("JHS") ] approximately Two (2) years ago on an unrelated matter. [JHS] was a partner in [the DIP], and currently owns 100% of the shares in JHS Properties, Inc., which is the current general partner of the [DIP]. [The Firm] currently represents Thomas J. Schlacter [ ("Schlacter") ] and William V. Papaik [ ("Papaik") ] in unrelated litigation. Schlacter and Papaik were partners in [the DIP], but have not had any interest in [the DIP] for some years prior to the filing of the bankruptcy. However, MIF Realty L.P., a creditor of the [DIP], ha[s] asserted that [Schlacter] and [Papaik] were liable on a $2.2 Million Dollar loan, together with [the DIP] and numerous other defendants.

*See* Application, at p. 2–3, para. 6–7.

In further responding to the UST's objection, the DIP has represented to the Court that the Firm's representation of [ ] Swolsky in a domestic relations matter was "wholly unrelated to Perrysburg Marketplace". *See* Response to Objection of the United States Trustee to Application to Approve Employment of Attorney, p. 1, para. 2. Moreover, the DIP has represented that Schlacter and Papaik ceased to be partners in the DIP in December, 1986. *See* Response to Objection of the United States Trustee to Application to Approve Employment of Attorney, p. 1, para. 1.

The UST also objects to the DIP's proposed postpetition payments to the Firm. The DIP seeks to make monthly payments in the amount of the Firms's monthly fees and expenses into a trust account (the "Trust Account") held by the Firm (the "Postpetition Payments") based upon monthly bills received from the Firm. *See* Application, at p. 3, para. 7, Application, at p. 4, para. 9

(proposing that the Firm's monthly fee statements shall be submitted to the DIP, the Court and the UST). The Application provides that the Postpetition Payments shall be "subject to review by the Court". *See* Application, p. 3, para. 7. The Application further provides that the Postpetition Payments shall be "subject to withdrawal by the [Firm] only upon Order of [the] Court after Notice and Hearing on fee applications for sums earned". *See* Application, p. 3, para. 7.

The Application provides that the Trust Account "may, at all times contain a reserve in the amount of $8,352.31 in addition to the [Postpetition Payments]". *See* Application, p. 4, para. 12.

In addition, the Application provides that the Firm shall apply to the Court for approval of payment of its fees and expenses every 120 days. *See* Application, p. 4, para. 13.

### DISCUSSION

**Whether the Application Should be Denied Based On the Firm's Purported Conflict of Interest**

First, the court finds that the Firm's prepetition representation of JHS does not represent grounds for denial of the Application. *See Campbell v. Childress (In re Professional Development Corp.)*, 140 B.R. 467 (W.D.Tenn.1992) (finding that attorney could represent both corporation and corporation's president and sole shareholder in jointly administered bankruptcy cases); *c.f. TWI Int'l, Inc. v. Vanguard Oil and Service Co.*, 162 B.R. 672, 675 (S.D.N.Y.1994) (stating that "an attorney that represents a corporation in bankruptcy and its principal is not per se interested") (citation omitted).

Second, the Firm's representation of Schlacter and Papaik does not warrant denial of the Application. *See St. Angelo v. Sidco, Inc. (In re Sidco, Inc.)*, 173 B.R. 194 (E.D.Cal.1994) (affirming bankruptcy court order authorizing employment of attorney for debtor-in-possession in case where attorney for debtor had previously represented 90% stockholder of debtor-in-possession which stockholder was a guarantor and co-debtor of debtor-in-possession).

■ Notwithstanding the foregoing analysis, the Court notes that a professional employed in a bankruptcy case has an ongoing duty to ensure that it does not hold an interest adverse to the estate and to withdraw from the representation of a debtor when a conflict arises. *C.f. Roger J. Au & Son, Inc. v. Aetna Ins. Co. (In re Roger J. Au & Son, Inc.)*, 64 B.R. 600 (N.D.Ohio 1986) (disqualification of debtor's counsel warranted based on counsel's performance of legal services for both debtor and debtor's sole shareholder which related to sole shareholder's personal guarantee of corporate debt).

**Whether the Application Should Be Denied Based On the DIP's Proposed Terms of Retention of the Firm**

■ Initially, the court notes that the Postpetition Payments are not analogous to a prepetition retainer agreement. The Application does not seek the approval of a fixed amount to be held by the Firm as a retainer. *C.f.* 11 U.S.C. § 328(a) (debtor may employ professionals "on any reasonable terms and conditions of employment, including on a retainer"). Rather, the Application contemplates postpetition payments by the DIP of indeterminate sums into the Firm's trust account.

The Court agrees with the Court in *In re Pacific Forest Indus., Inc.* that proposed terms of retention such as the Postpetition Payments are fundamentally at odds with the Congressional intent expressed in Bankruptcy Code sections 330, 331 and 503. *In re Pacific Forest Indus., Inc.*, 95 B.R. 740, 745 (Bankr.C.D.Cal.1989) (denying application providing for postpetition retainer payments to debtor's counsel); *c.f. In re Genlime Group, L.P.*, 167 B.R. 453 (Bankr.N.D.Ohio 1994) (finding that proposed postpetition disbursements to professionals absent notice and a hearing did not comply with § 331). More specifically, § 331 restricts a professional's right to receive postpetition disbursements from the estate. Section 331 requires notice and a hearing, plus allowance by the Court prior to the disbursement of professional fees from the estate.

The fact that the Firm has agreed to deposit the proposed Postpetition Payments into a trust account rather than into its general account does not make a material difference in this Court's analysis. "[T]he central question is whether the estate should be allowed to part with funds making them at least temporarily and nominally unavailable for payment of postpetition business expenses." *In re Cal–Inland, Inc.*, 124 B.R. 551, 554 n. 8 (Bankr.D.Minn.1991).

Furthermore, the Court finds that § 363(b)(1) proscribes the proposed Postpetition Payments by the DIP. Section 363(b)(1) permits a debtor to use property of the estate, "other than in the ordinary course of business", after notice and a hearing. *See* 11 U.S.C. § 363(b)(1) (requiring "notice and a hearing" prior to debtor's "use" of property of the estate "other than in the ordinary course of business"); *see also* Fed. R.Bankr.P. 2002(a)(2) (requiring twenty-day notice to all creditors prior to debtor's use of estate property other than in the ordinary course of business). The DIP has only provided notice of the Application to the Court and the UST. *See* Fed.R.Bankr.P. 2014 (requiring notice of application for employment to be filed with the court and a copy of the application to be provided to the United States Trustee). This procedure fails to satisfy the express requirements of § 363.

Furthermore, accepting arguendo the DIP's argument that the Postpetition Payments are permissible under the Bankruptcy Code, the Court finds that the DIP has failed to demonstrate that such terms of retention are reasonable. The court in *In re Fitzsimmons Trucking, Inc.* noted that, as a practical matter,

> a debtor in Chapter 11 needs all the control over post-petition revenues that it can get. Reorganizing businesses have to negotiate and adequate protection payments to secured creditors; to satisfy skittish employees by maintaining payroll, benefits, and working conditions; to keep taxing authorities satisfied, by avoiding accrual of post-petition liabilities; and, usually, to meet current trade expenses on a cash-payment basis. These cash needs remain constant throughout the case, and are critical to its success. Locking substantial funds into escrow for the benefit of counsel

for any period of time more than the first months of the case deprives the debtor of that much more flexibility in meeting these needs, and particularly in meeting the 'emergency' or 'unanticipated' costs that crop up in Chapter 11 cases with distressing frequency.

*In re Fitzsimmons Trucking, Inc.*, 124 B.R. 556, 558 (Bankr.D.Minn.1991). The Court cannot conclude that the proposed Postpetition Payments represent a reasonable accommodation between the interests of the DIP, the Firm, and the bankruptcy estate.

The Court notes that even the courts which have permitted postpetition disbursements of property of the estate to professionals prior to notice and a hearing have done so only in "rare circumstances". *U.S. Trustee v. Knudsen Corp. (In re Knudsen Corp.)*, 84 B.R. 668, 671 (9th Cir. BAP 1988). The DIP asserts that the Postpetition Retainer Payments are "a necessary condition for [the Firm's] representation, since counsel for a DIP is typically not permitted to withdraw from representation based upon the non-payment of fees" and that such an arrangement "substantially lowers the amount of the initial retainer required for [the Firm] to represent a chapter 11 DIP". The courts which have followed *Knudsen* have not viewed such bare assertions as supportive of a finding of "rare circumstances" which would warrant a departure from the procedures established in § 331. *See In re Cal–Inland, Inc.*, 124 B.R. 551 (Bankr.D.Minn.1991) (disapproving debtor's request to use postpetition revenues to make postpetition retainer payments in bankruptcy case which was not unusually large and which case did not place an undue hardship on debtor's counsel); *c.f. In re Dandy Lion Inns of America*, 120 B.R. 1015, 1018 (D.Neb.1990) (reversing bankruptcy court for failure to apply *Knudsen* factors and stating that "[i]f the court did not limit the authorization of the payment procedure used in this case to the certain rare cases contemplated by the court in *Knudsen,* the notice and hearing prior to allowance and disbursement requirement, as stated in sections 330 and 331 of the Code, would be rendered virtually meaningless"); *In re ICS Cybernetics, Inc.*, 97 B.R. 736, 738 (Bankr. N.D.N.Y.1989) (*Knudsen* factors were not satisfied where "[t]here [were] no factual allegations in [the applications] address[ing] the specific criteria of *Knudsen* other than conclusory statements concerning having to wait six months to be paid and protecting the [d]ebtor from large but uncertain periodic payments of fees and disbursements"); *In re Shelly's, Inc.*, 91 B.R. 803, 806–07 (Bankr. S.D.Ohio 1988) (finding insufficient facts to satisfy *Knudsen* factors).

Lastly, the Court cannot conclude that denying approval of such postpetition payment arrangements unfairly discriminates against professionals employed in a bankruptcy case. The Bankruptcy Code makes a distinction between professionals and other administrative claimants and the Court is bound to honor this distinction. As the court stated in *In re Pacific Forest Indus., Inc.*,

[t]he Code ... deals differently with fees of professionals than with payment of other people who provide services to the debtor. Employees do not need court permission to be paid and are usually paid as part of the ongoing operation of the business.... It is only those who deal with the actual reorganization of the debtor (rather than the ongoing business of the debtor) who are required to be employed under § 327 and whose applications for payment must be approved by the Court. It is only these professionals who cannot seek payment more often than once every 120 days unless the Court otherwise orders. It is clearly the intent of Congress that professionals involved in the reorganization effort itself be carefully scrutinized, that their dealings be open to the public, that they maintain the distance from the debtor that is not possible for any employee, and that they not drain the debtor of the capital that it needs to fund its reorganization.

*In re Pacific Forest Indus., Inc.*, 95 B.R. at 743.

In light of the foregoing, it is therefore

ORDERED that the Application be, and it hereby is, denied without prejudice.